State, Brittin et al., v. Blake et al.

---

THE STATE, WILLIAM BRITTIN AND OTHERS, PLAINTIFFS IN ERROR, v. JOSEPH BLAKE AND OTHERS, DEFENDANTS IN ERROR.

1. An assessment made by the defendants as managers under an act approved April 1st, 1868, enabling the owners of certain swamps and marsh lands to drain the same, having been affirmed on *certiorari* by the Supreme Court as to all the prosecutors excepting B., who had leave to apply to the court to have the assessment against him corrected, the assessment to stand in case he failed to apply within a limited time, and judgment afterwards entered against B. and the others for costs—*Held*, that there was no error in this, the necessary inference from the record being either that B. had failed to apply within the time, or, that having applied, no correction was found necessary.

State, Brittin et al., v. Blake et al.

2. The spirit of the maxim, " *Victus victori in expensis condemnandus est,*" has for many years prevailed in our courts.

3. There was no error in holding the act which authorized the assessment to be valid, although it provided for no appeal from the decisions of the managers.

4. The constitutional restriction on taking private property without compensation, is confined to a single branch of the legislative authority, the right of eminent domain, and has no application to an assessment made under the police powers of the legislature.

5. The validity of the assessment was not affected by the subsequent repeal of the act which authorized it.

In error to Supreme Court.

For former proceedings in this case, see 6 *Vroom* **208**

For the plaintiffs in error, *A. W. Cutler.*

For the defendants in error, *H. C. Pitney.*

The opinion of the court was delivered by

WOODHULL, J. This writ of error brings under review a judgment of the Supreme Court, affirming an assessment made by the defendants as managers, under an act approved April 21st, 1868, enabling the owners of swamps and marshy lands lying on the Upper Passaic and its tributaries, in the counties of Morris and Somerset, to drain the same.

The first error assigned relates to that part of the judgment of the Supreme Court, which required the plaintiffs in *certiorari*, who are the plaintiffs in this court, to pay costs to the defendants.

By the common law, costs were not allowed by that name to either party. They were, however, always considered and included in the quantum of damages in actions where damages were given. The statute of Gloucester, 6 *Ed. I, ch.* 1, was the first to give them, *eo nomine,* to the demandant in a real action, as the statute, 3 *Hen. VII, ch.* 10, was the first to allow them on a writ of error. But excepting in one particular case under the statute of Marlbridge, 52 *Hen. III, ch.* 6,

no costs were allowed the defendant in any shape, till the statute 23 *Hen. VIII, ch.* 15, and several later ones, gave him, if he prevailed, the same costs as the plaintiff would have had in case he had recovered. The statutes of Gloucester and other kindred acts have very generally received from the courts at Westminster Hall, a liberal construction; so that the maxim " *Victus victori in expensis condemnandus est,*" became at length, as well established in the English as it was in the civil law. There can be no doubt that the spirit of this maxim has for many years prevailed in our own courts. 3 *Bla. Com.* 399; *Hullock on Costs, ch.* 1, § 1; *ch.* 11, § 1 (124.)

In the case of *Aller et al.* v. *Shurts,* 2 *Harr.* 188, the *certiorari,* as in the present case, was prosecuted under the common law jurisdiction of the Supreme Court; its object being to set aside a discharge by the Court of Common Pleas, of an insolvent debtor. The question was whether costs should be allowed to the defendant in *certiorari* on affirmance of his discharge. This question Chief Justice Hornblower answers in the affirmative, citing in support of his conclusion the principles and practice of the English courts as well as the decisions of our own. " These decisions," he remarks, " are sufficient to warrant us in giving costs in this case. Courts of common law have long exercised an equitable power in matter of costs. There is no statute giving costs on granting new trials, putting off causes, failing in applications made to the legal and discretionary powers of the court; and yet, costs in such cases are constantly ordered to be paid. These writs of *certiorari* are in the nature of writs of error, and costs upon them are clearly within the spirit and equity of the statutes giving costs in error."

Mr. Justice Southard, in *Hann* v. *McCormick,* 1 *South.* 109, declares it to be a general principle that the prevailing party in suits, in all courts of law, is entitled to costs. It is clear then, both upon the principles of the common law and from the practice and decisions of our courts, that the Supreme

Court did not err awarding costs to the defendants in this case, if they were in fact the prevailing party.

That the court below regarded them as such, is manifest, and it seems equally clear that upon any fair interpretation of the result of the proceedings of the prosecutors, they must be regarded as the vanquished party, and completely within the range of the maxim, " *Victus victori in expensis condemnandus est.*" It is true, the Supreme Court in affirming the assessment with costs, except William Brittin, whose assessment they direct to be corrected. This would, of course, suggest a doubt whether, under such circumstances, there could properly be any judgment entered against Brittin for costs. But upon examining the record it will appear that Brittin merely had leave to apply for the correction within a limited time, and that in default of such application the assessment should stand in all things affirmed as to him and the land assessed in his name. Whether or not such application within the time limited was, in fact, made by Brittin, or in his behalf, does not appear. The judgment for costs being entered against all the prosecutors, including Brittin, the necessary inference is, that he either failed to apply in accordance with the order of the court, or that, having applied, no correction was found necessary.

In either case the judgment, as to costs, must be held to be good against Brittin, as well as against the other prosecutors.

The second and third assignments of error call in question the constitutionality of the act under which the assessment was made. It is insisted on the part of the plaintiffs in error, that this act is unconstitutional, in the first place, because it gives no appeal to the parties assessed.

The second section of the act makes it the duty of the managers to estimate, according to their best judgment, the cost of removing the obstructions in the river and its tributaries, and of widening, deepening, and straightening the channels thereof, if in their opinion required, and having made such estimate, to assess upon the owners of the land the amount of it, together with the necessary expenses, ac-

cording to their judgment of the benefit which will accrue to each of said owners, by the draining of their lands. The objection now under consideration is, not that the act invests the managers with unlawful powers, but that having confided to their discretion and judgment the important matters just stated, it makes their decision upon them final.

It is not easy to understand how this can be supposed to affect the validity of the act.

The constitution being entirely silent on the subject, whether an appeal should be given or withheld, it was a matter resting exclusively in the legislative discretion, even if that discretion has been unwisely exercised in this case, which is by no means admitted. The error is quite beyond the reach of judicial correction. One consideration which may very probably have influenced the legislature to withhold an appeal from the decision of the managers, was the fact that they were to be chosen by the owners themselves. But however this may have been, it is certain that our legislatures have always, without question or complaint, exercised the right in similar cases, to grant or withhold an appeal at their pleasure. This was done in the act of 1783, relating to the drainage of meadow ground, and in the act of 1788, to enable the owners of the tide swamps and marshes to improve the same. *Wils. Laws* 382; *Pat. Laws* 84.

The act last cited provided for the appointment, by the Court of Common Pleas, of three or more commissioners to survey the swamps or marsh, and lay out the necessary works. It provided also for the election by the land owners, of managers to estimate the expenses of the necessary works, and to assess them ratably upon the land owners; and also for the election of three or more indifferent men to value the swamps or marsh. From the proceedings of the commissioners, the act gives an appeal, but gives none from the decision of those who were to value the land, nor from the proceedings of the managers who were to make the assessments.

Instances of a similar exercise of the legislative discretion, might be multiplied almost indefinitely. They may be found not only in the numerous acts for the improvement of swamps

and meadows, but in many others, such as the small cause act, which expressly denies an appeal in certain cases—in our road laws, and in the charters of municipal and other corporations.

There was no error therefore, in holding the act to be valid, although it gives no appeal to the parties assessed.

The next objection to the validity of the act is, that it violates the constitutional provision, which forbids the taking of private property for public use without just compensation.

If the assessments and other means and instruments authorized by this act in furtherance of the intended improvement, are to be referred, as they usually and I think properly are, to the general police powers of the legislature, it seems clear, that the objection now under consideration can have no weight in the decision of this case. For it is well settled that the restriction on taking private property without compensation, is confined to a single branch of the legislative authority—the right of eminent domain—and has no application either to the taxing power or to the police powers of the legislature. *Sedg. Con. Law.* 499–502, and cases.

Another answer to this objection at least equally conclusive is, that acts of the same character as the one now drawn in question, not differing from it materially either in principle or structure, authorizing similar improvements to be effected by the use of almost precisely the same kind of means, have stood upon our statute books for more than a century, acquiesced in by the people, unchallenged by the bar, and tacitly if not expressly sanctioned by our courts. I concur in the views expressed by Mr. Justice Van Syckel in delivering the opinion of the Supreme Court in this case. " This branch of legislative power," he remarks, " which regulates the construction of ditches and sewers and the drainage of meadows and marshy lands, has been exercised so long, and is so fully recognized, that it is now too late to call it in question. It is clearly affirmed in the *Tide Water Company* v. *Coster,* and cannot be opened to discussion." To show how fully the reference to the case of the *Tide Water Company* v. *Coster* is sustained, I cite the very explicit language of the present

State, Brittin et al., v. Blake et al.·

Chief Justice in delivering the opinion of the court in that case.  He says: " But the regulations established by the legislative power, whereby the owners of meadow lands are compelled to submit to an equal burthen of the expense incurred in their improvement, are rules of police of the same character as provisions concerning party walls and partition fences.   To these cases therefore, the principle upon which the decision of the present case rests, is not to be extended." 3 C. E. Green 531.

The only question remaining to be considered is that raised by the fourth assignment of error, namely, as to the effect of the repeal of the act under which the assessment was made. It is insisted by the plaintiffs in error that in consequence of this repeal, the assessment is no longer enforceable, and should have been declared void by the Supreme Court.  The repealing act was passed March 16th, 1870, (Laws, 1870, p. 602,) excepting and reserving, however, all property, rights, privileges, matters and things, liabilities, agreements or responsibilities legally acquired, incurred, assumed, performed or made under or by virtue of the act so repealed.

Upon this part of the case, I adopt the conclusion and the language of the opinion delivered in this case in the Supreme Court, and already referred to, namely, that " the saving clause in the enactment shields the assessment made before the repeal from its operation.   The assessment was perfected, and the liens had attached, and the remedy to collect it must also inhere as an incident essential to the enjoyment of the right saved."

There was no error in holding the assessment valid, notwithstanding the repeal of the act which authorized it.

The judgment of the Supreme Court is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DAL RIMPLE, DEPUE, WOODHULL, CLEMENT, DODD, OGDEN, WALES.   9.

*For reversal*—None.

CITED in *Williams* v. *Allen,* 5 *Stew. Eq.* 485.