16 N.J. Super. 60 (1951)
83 A.2d 827
IN THE MATTER OF THE SWORN APPLICATION OF MRS. WILLIAM G. WELLHOFER AND OTHER FREEHOLDERS OF THE CITY OF ATLANTIC CITY, IN THE COUNTY OF ATLANTIC, FOR A SUMMARY INVESTIGATION INTO THE MUNICIPAL EXPENDITURES OF THE SAID CITY.
Superior Court of New Jersey, Law Division.
Decided September 28, 1951.
*63 Messrs. Perskie and Perskie (Mr. Joseph B. Perskie appearing), attorney for the petitioners, Drusilla T. Maxwell and Stephen L. Valore.
Mr. Murray Fredericks, attorney for the respondent, the City of Atlantic City.
WOODS, J.S.C.
The question to be resolved is: Are the petitioners entitled to reasonable compensation for services, including counsel fees and out-of-pocket expenditures, allegedly incurred in connection with the recent summary investigation into municipal expenditures of the City of Atlantic City.
The court will answer both with respect to such services performed before the order made and after the order made for a summary investigation by Justice Eastwood.
Counsel have entered into a stipulation signed by the court dealing with amounts to be assessed against the City of Atlantic City and the right of appeal dependent upon the court's ruling. Also, although two distinct causes are here involved, both are to be resolved under the question raised.
*64 Petitioners are Drusilla T. Maxwell, who appears as the administratrix c.t.a. under the will of her deceased brother, Thomas D. Taggart, Jr., and Stephen L. Valore, Esq.
Drusilla T. Maxwell seeks to recover for the estate of her brother the earned and reasonable value of the services which he rendered in connection with the recent investigation, from its beginning until its conclusion, into the financial affairs of the City of Atlantic City, plus his out-of-pocket moneys expended by him, namely $521.04, during said investigation.
Stephen L. Valore seeks to recover the earned and reasonable value of his services for the period beginning with the preparation for the invocation of R.S. 40:6-1, on behalf of the qualified petitioning freeholders whom he and Taggart represented, until the then Supreme Court, by former Justice Eastwood and by former Chief Justice Case, determined that in the light of all the proofs adduced the ends of justice would best be served by a summary investigation into the financial affairs of the City of Atlantic City as requested by the applicants, the qualified freeholders.
In June, 1948, Mr. Justice Eastwood appointed Harold W. Bennett, Esq., and Edmund D. Bowman as experts to prosecute the investigation. Thereafter, Justice Eastwood and later Judge Frank T. Lloyd, Jr., appointed by court order William G. Freeman, Esq., Nathaniel Rogovoy, Esq., and Lynwood Lord, Esq., to aid in the investigation. It is conceded that neither Thomas D. Taggart, Jr., nor Stephen L. Valore were ever appointed by court order, or otherwise, to represent the 34 freeholders of the City of Atlantic City, who filed their affidavit agreeable to R.S. 40:6-1. On the moving papers the name of Thomas D. Taggart, Jr., Esq., only appeared.
After the investigation was concluded, Judge Frank T. Lloyd, Jr., on August 17, 1950, signed an order discharging the freeholders' bond as provided under R.S. 40:6-2, in which appear the words that the investigation into the affairs of the City of Atlantic City was "clearly justified."
*65 We assume jurisdiction by virtue of the authority as raised and declared in North Bergen Township v. Gough, 107 N.J.L. 424, 154 A. 113 (Sup. Ct. 1931).
The court heard counsel in oral argument and it now has before it briefs.
Counsel for the petitioners argues: (1) Taggart and Valore furnished services; (2) that such services were performed for the freeholders, and that (3) such services were necessary. All these assertions must be conceded. He then raises the question: Does the statute provide for the compensation claimed? Pertinent to the point raised counsel quotes the third paragraph of R.S. 40:6-1 which reads as follows:
"The costs incurred under this section shall be taxed by the justice, and upon his order be paid by the disbursing officers of the county or municipality whose expenditures may have been investigated."
No exception is taken by this court to the definition of "costs" as presented by petitioners' counsel.
We note, too, that the "costs incurred" under this section "shall be taxed by the justice," and "upon his order be paid by the disbursing officers of the county or municipality whose expenditures may have been investigated."
At oral argument this court asked counsel for precedents for establishing petitioners' claims. The answer by brief is: "Diligent research of counsel has uncovered neither precedent supporting petitioners' claim, nor a precedent which would justify the Court in denying the relief sought." Counsel, moreover, concedes that the issue is one of "novel impression both in this State or in any other state where a similar statute is in force." Counsel argues, therefore, "That this court is free to adopt the view which in its judgment will best and most effectively promote the fair and just administration of justice and that view which may be most consonant with a proper and liberal interpretation of this remedial legislation."
It is apparent, however, that petitioners' claims for costs are predicated on the third paragraph of R.S. 40:6-1, and *66 that this claim is resisted by respondent's counsel under the Rules of Practice and Procedure of this court as set forth in Rule 3:54-7, and particularly under subdivision (d) which reads as follows:
"No fee for legal services, shall be allowed in the taxed costs, or otherwise, except:

* * * * * * * *
(d) or as provided by these rules with respect to any action, whether or not there is a fund in court, but the authority, heretofore vested in the Court of Chancery for the granting of counsel fees in causes generally, is hereby superseded."
Petitioners' adversary contends that the claims for fees and costs must rise or fall according to the rules; that subdivisions (a), (b) and (c) have no application to the subject matter, and that the petitioners' rights or claims must be comprehended in subdivision (d).
It is plain, too, that counsel for petitioners does not claim under Rule 3:54-7, and to persuade this court, differentiates proceedings by way of "investigation" from "actions," and argues that the Rule 3:54-7 has special reference to "a limited number of actions  a limited type of proceedings between plaintiffs and defendants in which a court may award fees." (Italics the court's.) Counsel asserts: "It does not attempt to preclude the allowance of fees in matters such as the instant one which is not an action and which is not a proceeding between a plaintiff and a defendant."
Both counsel agree that the issue under consideration grows out of an investigation and not an action. They cite In re Wellhofer, 137 N.J.L. 165 (Sup. Ct. 1948), Hoboken v. O'Neill, 74 N.J.L. 57 (Sup. Ct. 1906).
Counsel for petitioners contends that Rule 3:54-7 is inapplicable to our case, and further by deductive reasoning insists that "If the construction contended for by the City be sustained, then there will have sounded the death knell of this statute just as clearly and just as effectively as if the legislature had wiped it off the statute books. It is difficult to imagine, much less conceive, that the Supreme Court *67 could possibly have intended any such construction of this Rule."
Counsel for petitioners cite cases: Massett Building Co. v. Bennett, 4 N.J. 53 (1950); John S. Westervelt's Sons v. Regency, Inc., 3 N.J. 472 (1950); Farr v. First Camden National Bank and Trust Co., 6 N.J. Super. 223 (App. Div. 1950), and points out the distinguishing features already stressed. All, to be sure, involve a plaintiff and a defendant.
In its nature, this proceeding is a taxpayer's suit, and yet, not such as we may find in the reports where there is a plaintiff and a defendant, and where issues in controversy are determined finally and judgment is rendered.
Under R.S. 40:6-1 "such justice may, in his discretion make a summary investigation into the affairs of such county or municipality" or "He may, at his discretion, appoint experts to prosecute such investigation, and may cause the results thereof to be published in such manner as he may deem proper." No verdict is given; no judgment is pronounced. It is a fact-finding procedure in a "quasi-judicial" way, but "there is no accusation," "No one's conduct is impugned," "No wrong-doing is established by the order of the court," "no adjudication necessary on the part of the justice in making the order approving or sustaining the allegations in the petition." City of Hoboken v. O'Neill, 74 N.J.L. 57, 64 A. 981 (Sup. Ct. 1906).
In the absence of statutory authority and where no fund has been created or preserved, a taxpayer is not entitled to the allowance of counsel fees. 5 A.L.R.2d 877. Gosso v. Hart, 123 Or. 67, 261 P. 80 (Sup. Ct. 1927).
"In People ex rel. Stephens v. Holten (1922), 222 Ill. App. 427, affirmed (1922) 304 Ill. 394, 136 N.E. 738, 24 A.L.R. 929, while the court recognized that it should do all in its power to compensate reasonably those who seek to protect the public by compelling the return of public funds nevertheless held that there could not be any allowance against a defendant where no fund had yet been collected." 5 A.L.R.2d 877, sec. 4.
*68 Then, again:
"The view has been taken that where ordinary adversary proceedings have been litigated as between taxpayers bringing a representative action, and a governing body, resulting in a verdict adverse to the taxpayer plaintiffs, the court is without authority to make any allowance of counsel fees to the defendant as a part of the costs.
Thus, in Whitney v. Jersey Shore (1920), 266 Pa. 537, 109 A. 767, lack of success in an action brought by certain taxpayers on their own behalf and on behalf of the other taxpayers of the township to restrain the annexation by the defendant borough of lands within the township, was held not to warrant the court in making an allowance of counsel fees to the defendant in his bill of costs, since such an allowance was, in ordinary adversary proceedings not involving any common fund protected or enhanced or for the actual benefit of all the parties to a conflict, beyond the power of the court.
In the absence of statutory authority, and except under conditions which have been held to authorize a court of equity to make an allowance of counsel fees out of a fund created or preserved by a taxpayer such an allowance generally will not be awarded in favor of a successful taxpayer against his opponent in litigation." 5 A.L.R.2d 878 (secs. 3, 7.)
"Thus, in Fairbanks, M. & Co. v. Hill (1934), 48 Ohio App. 418, 194 N.E. 397, where a taxpayer's suit was brought to enjoin the carrying out of a contract entered into between a municipality and a contractor, the court, while conceding that upon the successful termination of the suit in the taxpayer's favor an allowance for counsel fees should be made, by virtue of a statute, as against the municipality, held that such allowance could not be made, in the absence of a specific statute so directing, against the contractor, since it would be a derogation of the rules of practice under the common law. The court added that the intent of the statute undoubtedly was to procure reasonable compensation to the individual taxpayers for bringing an action for the benefit of the municipality and obligated the municipality to pay the expenses of one who takes upon himself the burden which the duly constituted official should have assumed."
Even where proceedings instituted by a taxpayer against a city resulted in a pecuniary benefit to the municipality, no enforceable contract arose between a municipality and an attorney who had brought a successful action. Thus in Park v. Laurens, 68 S.C. 212, 46 S.E. 1012 (Sup. Ct. 1904), where it appeared that a taxpayer's action had resulted in the collection of certain unpaid taxes from a private corporation *69 it was held that no implied promise arose between the city and the plaintiff because of the attorney's status as representative of the city upon which he could bring a direct action. The court further pointed out that a person may not be said to be the representative of a municipality simply because his action is of pecuniary benefit to it, since even when there is a strict legal right the authorities may regard its enforcement as injurious or impolitic, and may be supported in this view by the citizens generally. Pursuing this line further, the court stated that
"one interested may nevertheless set the machinery of the law in motion to enforce his right as a citizen to have the council perform a legal duty, and the judgment of the court, made in recognition of the rights of such citizen to have the legal duty performed, may confer, from the legal standpoint, great benefit on the municipality, and through it on its citizens; but it does not follow from this that the city is legally bound to recognize the actor in such proceedings as its representative in the litigation, whose reasonable contracts for attorney's fees and other expenses of the litigation would be the city's contracts."
On the other hand, a statute authorizing the bringing of a taxpayer's action has been construed as implying that reasonable counsel fees may be awarded. In Miller v. Pearce, 2 Cin. Super. 44 (Ohio Super. Ct. 1870), it was held
"That the provisions of a statute authorizing such a taxpayer's action contemplated also the payment of counsel fees, since its purpose was to encourage interposition by taxpayers to prevent the misapplication of public funds, even when the city solicitor and other representatives of the public thought that it was unnecessary. The court added that to check unwarranted suits, costs should not be awarded until the court was satisfied that there was a reasonable cause to investigate."
But see Southern v. Beeler, 183 Tenn. 272, 195 S.W.2d 857 (Sup. Ct. 1946) where the taxpayer has sought to prevent the illegal disbursement or collection of funds, but no fund has yet been collected, attorneys' fees will not be allowed the complainant although his act has rendered a great public service to the taxpayers of a county.
*70 "Several jurisdictions have taken the view that a court of equity may, in its discretion, allow counsel fees to a taxpayer who has maintained at his own expense a successful suit for the preservation, protection, or increase of a public fund, or who has created at his own expense, or brought into court, a fund enriching the public treasury to the benefit of the taxpayers as a whole. Counsel fees in such instances are allowable by courts of equity for the encouragement of proper taxpayers' actions, not as a reward, but as indemnification to the taxpayer who otherwise must respond in payment to this attorney." 5 A.L.R.2d 881, sec. 9.
Our reading of these taxpayers' suit reports permits us to say that the right to recover attorneys' fees from one's opponent in litigation as a part of the costs thereof does not exist at common law; that a court of equity may properly make an allowance of reasonable counsel fees out of a common fund or common property created or preserved for the benefit of all common owners through the efforts of one of such owners.
Petitioners as we have said, argue that they are entitled to counsel fees and costs under R.S. 40:6-1. Respondents rest their case on Rule 3:54-7. Petitioners say that the rule, by its terms, obviously does not apply to the type of proceeding here under scrutiny of the court, and "further that a proper construction of the rule, considering its history, its purpose and the effect * * * must lead to the inevitable conclusion that the rule is inapplicable."
It is noteworthy that both petitioners and respondents agree that the case sub judice must be differentiated and classified not as an "action," but an "investigation." On this theory, both insist and reason that they are entitled to a favorable decision.
Counsel of both sides cite no precedent to guide us. What, then, are we to find in the statute R.S. 40:6-1 and in the Rule 3:54-7, respectively, in their relation to attendant circumstances of proceedings hitherto? Are we to determine the right to fees and costs on the technical difference between an action and an investigation?
*71 The statute provides: "such justice may, in his discretion, make a summary investigation * * *." The term "summary" is said not only to have a fixed and clear meaning in ordinary language, but to possess a well defined meaning in the terms of legal proceedings and phraseology. Ordinarily the word means "brief," "compendious," "concise," "condensed to the utmost possible degree," "reduced into a narrow compass, or into a few words," "short," "succinct." "The word may be used as conveying the idea of rapidity of performance and quickness of execution; and hence as meaning performed without ceremony; quickly executed; rapidly performed; without ceremony or delay." 60 C.J. 1011, par. 2. A summary investigation is a summary proceeding.
Summary proceedings being in derogation of common law, must conform closely to the statutes authorizing them, which are to be strictly construed so as to apply only in particular cases or situations specified in the statutes, and are not to be extended by implication or intendment. 60 C.J. 1015.
The term "action," unless accompanied by restrictive words, generally applies to any legal proceeding in a court of justice, whether at law or equity, to enforce a right, or redress a wrong. "`Action' may be used in a strict technical sense, or it may be used in a more general and comprehensive sense; * * *.
"It is a generic term and as used in a broad and comprehensive sense it has been held to mean the pursuit of a right in a court of justice, without regard to the form of the legal proceedings." 1 C.J.S., p. 938.
Analogous to statute, we must regard the rules of court, the context, terminology. We do not in Rule 3:54-7 take the view that this is to be read and interpreted to show the word "action" in contradistinction to the words "summary investigation." The wording here is significant. For instance (1): "No fee for legal services shall be allowed in the taxed costs or otherwise, except * * *." (Italics ours.) *72 The disjunctive "or" marks an alternative corresponding to "either." In law it receives the same meaning as it carries in common parlance. While, in its strict signification, the term expresses a disjunctive meaning, and marks an alternative, it may be used in an explanatory sense. The term "otherwise" denotes "by other like means," different from that to which it relates; "in any other way, or ways"; "under other circumstances." (2) We then have the exceptions noted in (a), (b), (c) and (d). It is to (d), "or as provided by these rules with respect to any action, whether or not there is a fund in court * * *," that our attention focuses. (Italics ours.) The words "with respect to any action" are both comprehensive and exclusive; that is, with respect to "action" we opine any proceeding, and with regard to fees such as are provided in the rules.
It is noteworthy
"that periodically throughout the investigation from 1948 on, Nicholas A. Damask, one of Edmund D. Bowman's assistants, applied to the court and obtained orders allowing for periodic payment for his fees and services. As early as April 18, 1949, William G. Freeman, a court appointed assistant to the experts, appeared before the Honorable Frank T. Lloyd, Jr., in open court and received by court order part payment on account of his fees for legal services, and that thereafter and in open court on June 10, 1949, Harold W. Bennett, one of the experts appointed by court order, appeared before Judge Lloyd and obtained orders for payments on account of services rendered by Raymond W. Hurter, court stenographer, Nathaniel Rogovoy, legal assistant to the expert, Edmund D. Bowman, one of the experts, and for Harold W. Bennett himself. On December 9, 1949, application was again made in open court by Mr. Bennett and Mr. Bowman for payment on account of fees and expenses in the investigation up to and including October 31, 1949. At that time in December of 1949, orders were signed allowing fees and expenses to Mr. Bennett, Mr. Bowman, Lynwood Lord, legal assistant to the experts, and William G. Freeman, legal assistant to the experts. Finally, in August of 1950, by court order and in open court, final disbursement was made to all the court appointed officials, but in all that time neither Thomas D. Taggart, Jr., nor Stephen L. Valore made any application for their fees or expenses."
Payment for fees and expenses were objected to by W. Elmer Brown, Esq., special counsel for the City of Atlantic *73 City, on the ground that the judge then in charge "would * * * be prejudging the responsibility of the city prior to the final determination of the investigation." Judge Lloyd, however, aptly remarked on April 18, 1949: "The bond given by the petitioners I feel is given in the event an investigation is such that on its face it is frivolous and ridiculous. From the investigation which has developed to date in this case, I am convinced that the original order was a proper one and I think you may rest assured that the city will be called upon to pay the expenses of this investigation."
In fact, from April, 1949, until August, 1950, petitioners at no time asked for counsel fees on the strength of R.S. 40:6-1 or the rules of court.
The freeholders' bond dated August 17, 1950, and recorded August 23, 1950, was discharged on order of the court, in which order, among other things was recited the fact that the investigation was justified. Even then no application was made by counsel for fees and costs. Also, in August, 1950, final disbursements were ordered to be paid to the officers appointed by the court. On August 7, 1950, when fees and allowances were ordered paid, the judge remarked: "That, I think, concludes the investigation, our phase of it anyway * * *." In all the proceedings, up to the time that the petition under consideration was filed, there is no suggestion on the record that the petitioners made application (except for the colloquy referred to in respondent's brief, p. 15), and that the court entertained a suggestion for fees and costs now requested.
Does the statute, R.S. 40:6-1, permit this court to respond to the petition for fees and costs? Counsel for petitioners stresses: "The costs incurred under this section shall be taxed by the justice, * * *." "Counsel fees awarded by order of court are analogous to costs; in fact, they are to be classed in the same category, and the rule was that the right to costs in legal proceedings was based directly or indirectly, on statute." State v. Blake, 36 N.J.L. 442 *74 (E. & A. 1872) and the cases cited in Katz v. Farber, 4 N.J. 333 (1950).
But counsel for petitioners contend that "under this section" the word "costs" comprehends such expenses as were incurred by the freeholders up to the time the court appointed the experts to investigate. We find no precedent for such conclusion. Now it may well be that Thomas D. Taggart, Jr., Esq., and Stephen L. Valore, Esq., might have thought that they would be appointees of the court as experts at the time the order for a summary investigation was ordered (June, 1948), but the court saw fit to do otherwise.
True it is that to set the machinery for an investigation in motion, there had to be presented (1) an affidavit to the Supreme Court justice setting forth jurisdictional facts and status of the affiants that they had cause to believe that the moneys of the City of Atlantic City were being or had been unlawfully and corruptly expended, with a (2) request to the justice to investigate. But when the order of the court was entered, the freeholders and petitioners' duties ended. And, to our way of thinking that was the time they, the petitioners, not having been appointed as experts, should have asked for fees and costs, if allowable, but to us doubtful. At least, this is the inference to be drawn from Judge Lloyd's remarks on January 13, 1950, in answer to Mr. Taggart's: "You don't want me to speak in behalf of them," and the answer: "No. They have performed their duties and the experts have been appointed."
Counsel for the petitioners contends with some force that inasmuch as the experts were paid pursuant to paragraph 3 of R.S. 40:6-1, the petitioners likewise should be paid; that the filing of the application and the work incident thereto prior to the appointment of the experts, is as much a part of the section as is the authorization to appoint the experts. "* * * if the statute authorized affidavits to be furnished by freeholders, it must, impliedly, at least, authorize the freeholders to appear by counsel, rather than as individual laymen. * * *" "Clearly mere freeholders * * * cannot *75 be expected on their own to present a prima facie case * * * withstand the persistent, technical attack made upon the document by specially learned, competent and highly experienced counsel * * * jurisdiction of the court could not have been obtained" against "defensive dilatory tactics."
Petitioners' counsel further point out that the fees and costs should be determined in the light that the statute is remedial and that it is for that reason to be liberally construed; that it has been designated as a "useful statute" (Hoboken v. O'Neill, 74 N.J.L. 57 (Sup. Ct. 1906); that even if a situation is not, strictly speaking, within the letter of a statute, none-the-less it may be held to be within the meaning of the Act because it might well be the mischief for which the remedy was intended; that that which is clearly implied in a statute is as much a part of the law as that which is expressed; and cites numerous cases that the spirit rather than the letter of the law will prevail.
In summary, "petitioners' position asserts that Rule 3:54-7 is not applicable either by its terms, which limits its applicability to actions involving a plaintiff and defendant, or under generally accepted canons of construction, for the reason that a holding that the statute does apply would violate the essence, the spirit and the intent of the legislation."
The purport is that unless the initiators of investigation have an incentive by way of getting costs, expenses and counsel fees to be paid by a municipality, freeholders would have no interest in availing themselves of the statute. On the other hand, were the statute to be construed in the light which petitioners press it should be interpreted, who can say to what limits freeholders might be tempted to harass, annoy and plough into government agencies, whether suits or investigations proved warranted or unwarranted, especially when there would be little to lose and much to be gained because the municipality can pay. And, even though "clearly justified," as here, but without recovering, preserving or protecting assets or funds, what reward should be paid when the results consist of not more than a report on an investigation *76 and recommendations incident thereto? These and nothing more. True it is that the cases cited by the city's counsel: John S. Westervelt's Sons v. Regency, Inc., 3 N.J. 472 (1950), Midler v. Heinowitz, 6 N.J. Super. 359 (App. Div. 1950), Katz v. Farber, 4 N.J. 333 (1950), and others, are actions in a limited sense, but they invoked an interpretation of the statute and rules pertinent to the granting of costs, expenses and counsel fees.
Consonant with petitioners' prayer for the allowance of costs, expenses and counsel fees, there must be shown not only the statute, express or implied, but also the rules of the court as we now have them under the new Constitution. In the Westervelt case, supra, Justice Heher, speaking for the court when the phrase "by law" (now deleted) was still continued as a part of subdivision (d) of Rule 3:54-7, significantly remarked:
"The rule as originally written is not ambiguous when considered as a whole. It was adopted in the exercise of the rule-making power relating to practice and procedure conferred upon the Court by Article VI, section II, paragraph 3 of the Constitution of 1947. It was plainly designed to be self-contained and exclusive. * * *
The rule as thus read is not violative of the rule-making authority granted by the provision of the Constitution cited supra. By the rationale of this provision, the rules promulgated September 15, 1948, in the exercise of the power superseded the pre-existing law, statutory or otherwise. This intent is rendered certain by Article XI, section IV, paragraph 10 of the Constitution providing that the functions, powers and duties of the judges under the old judicial system, not inconsistent with the new Constitution, shall be exercised by the judges of the Superior Court `until otherwise provided by law or rules of the new Supreme Court.' * * *
In the construction of constitutional limitations, courts are enjoined, as in the case of statutes, to collect the sense and meaning of the particular clause by comparing one part with another, and by considering all the parts as a whole, and not one part as a separate and independent provision bearing no relation to the remainder. The thing sought in the exposition of a constitutional provision is the intent of the people; and, in the absence of ambiguity calling for permissible extrinsic aids, this is to be found in the instrument itself. State v. Murzda, 116 N.J.L. 219 (E. & A. 1936). As said by Sir Edward Coke in regard to statutes, the whole is to be examined with a view to arriving at the true intention of each part. Co. Lit. 381a. *77 A clause of doubtful import in itself may be made plain by comparison with other clauses or provisions of the instrument. The true sense of one clause may be found by the words or obvious intent of another. And effect is to be given, if possible, to the whole of the instrument, and to every section and clause. One part may qualify another so as to restrict its operation otherwise than the natural construction would require if it stood alone. Cooley's Constitutional Limitations (8th ed.) 124 et seq.
In this view, we have no occasion to make a definitive pronouncement as to the essential quality and meaning of the phrase `subject to law' contained in the rule-making provision of Article VI, section II, paragraph 3 of the Constitution. The question is reserved for full argument in a cause in which it is directly raised.
And the fact that the cited statutes were in force when this suit was commenced does not serve to give appellants a vested right to counsel fees thereunder, for the statutory authority was purely discretionary, and, moreover, the incidents of a judgment are ordinarily governed by the state of the law at the time of the entry of the judgment. The taxation of costs is essentially procedural, generally affecting the remedy only. This principle also disposes of appellants' further contention that they are entitled to counsel fees for services rendered prior to the effective date of the Judicial Article of the Constitution of 1947. Vide, Igoe Bros. v. National Surety Co., 112 N.J.L. 243 (E. & A. 1934)."
Again, in Liberty Title and Trust Co. v. Plews, 6 N.J. 28 (1950), the Supreme Court with special reference to counsel fees for services performed prior to September 15, 1948, forcefully stated, by Chief Justice Vanderbilt:
"In Rule 3:54-7 this court has specifically enumerated the types of actions in which allowances to counsel may be made, and the discretion of the trial court is limited to the granting or denying of allowances in such actions. It was not contemplated that the rule would or could be completely dispensed with in individual cases under the provisions of Rule 3:1-2."
Moreover, we are of the opinion that all costs, expenses and requests for counsel fees up to the time Justice Eastwood ordered the investigation to proceed, cannot be included in taxed costs or otherwise, because they were without the authorization of the justice. This was not done and cannot be done now. See Baldwin v. Freeholders of Middlesex, 58 N.J.L. 285 (Sup. Ct. 1895). These expenditures and *78 services must be under the court's direction. North Bergen Township v. Gough, 107 N.J.L. 424 (Sup. Ct. 1931).
At common law, costs were unknown and were not recoverable by either party in any action, real, personal or mixed. If the plaintiff failed to recover, he was amerced, pro falso clamore suo; and if judgment was entered against the defendant, he was in misericordia for his unjust detention of the plaintiff's debt, and was punished at the court's discretion by exacting payment of the costs of litigation. 14 Am. Jur., sec. 5, p. 6. In actions at law the right to recover costs exists only by virtue of statutory authority. Ibid., sec. 6. We shall assume, too, that in this question before us the term costs comprehends attorneys' fees. As to the history of awarding counsel fees a lucid summary appears in Justice Case's review reported in Katz v. Farber, 4 N.J. 333 (1950). Costs in the federal courts rest not upon express statutory enactment by Congress, but upon usage, long continued and confirmed by implication from provisions in many statutes. While the amount and award of costs should follow the state law where Congress has not dealt with the subject, a District Court has power by rule of court to declare what disbursements shall be taxed.
Here we look to the rules of the Superior Court as promulgated by Article VI, Section II, paragraph 3 of the Constitution of 1947, and specifically to sub-section (d) of Rule 3:54-7 (as amended January 21, 1949) which then contained as stated the phrase "by law." As to this (John S. Westervelt's Sons v. Regency, Inc., supra) Justice Heher aptly remarked: "The phrase `by law' is operative in futuro; it has no retrospective significance; it was not intended that the conflicting preexisting statutes should remain in force. The rule covers the field to the exclusion of all else." And such was the rule and the law as of August, 1950, when the investigation was concluded under R.S. 40:6-1 et seq.
We have heard counsel on oral argument and we have taken time to read their briefs with citations. Argument on both sides has been strong in a matter of novel impression. *79 To us both statute and rules necessarily constituted the crucible of scales in which we weighed the merits of petitioners' and respondents' claims. Personal equation must give way to authority and law. By this courts are bound in exercising discretion and judgment.
Our conclusions are: (1) That the statute under which the investigation was initiated (R.S. 40:6-1) does not provide for costs or counsel fees up to and including the time the justice ruled that the "investigation was justified." (2) That costs and counsel fees are payable on court order only. (3) That petitioners, not being entitled to costs and counsel fees, prior to the appointment of investigators, a fortiori are not entitled to costs or counsel fees subsequent to the time the court set the investigation in motion. (4) That Rule 3:54-7 and sections (b) and (d) preclude counsel fees under the circumstances. (5) That Rule 3:54-7, by its language: "No fee for legal services shall be allowed in taxed costs or otherwise, except * * * as provided by these rules with respect to any action" (italics ours) "was plainly designed to be self-contained and exclusive" and covers the issue under consideration. There is no ambiguity here. The rule declares just when and what may be done.
The petitioners' request for the allowance of reasonable and earned compensation for services rendered by their counsel in connection with the summary investigation into the municipal expenditures of the City of Atlantic City is denied.