Ruby Ribergaard, Plaintiff-Appellee, v. Peter Thorwald Ribergaard, Defendant-Appellant.

Gen. No. 10,625.

Opinion filed December 30, 1952. Released for publication January 28, 1953.

LLOYD BEACH, of St. Charles, and GEORGE D. CARBARY, of Elgin, for appellant; PAUL M. HAMILTON, of Elgin, of counsel.

PUKLIN, PUKLIN, NELSON & PAGE, of Aurora, for appellee; ARTHUR L. PUKLIN, EDWARD PUKLIN, and JOHN S. PAGE, all of Aurora, of counsel.

MR. JUSTICE WOLFE delivered the opinion of the court.

Ruby Ribergaard filed her complaint in the circuit court of Kane county against Peter Thorwald Ribergaard asking for separate maintenance. The complaint alleged that both the parties were actual residents of the City of St. Charles in Kane county, Illinois; that they were married on September 21, 1935, and have no children; that during said marriage the plaintiff demeaned and conducted herself as a faithful, chaste and affectionate wife, and faithfully discharged her duties as his wife.

The complaint then alleges that on April 13, 1951, without any provocation on the part of the plaintiff, the defendant wilfully and wantonly abandoned and deserted the plaintiff and has ever since continued to live separate and apart from her, and has refused to resume the marital relations and that she is now living separate and apart from the defendant without any fault on her part; that at the time plaintiff was abandoned by her husband she was without food or means of support and medical care, and as a result her life was thereby rendered miserable and she became very nervous and broken in health and body; that the defendant is a strong, able-bodied man well able to provide plaintiff with a proper and suitable home; that he has been for many years employed as a carpenter in which occupation he earns at least $500 per month; that the defendant has refused and neglected to provide for the support of the plaintiff and since the separation he has paid nothing for her support and she is now without means of support.

The complaint then alleges that the parties are owners as joint tenants of certain real estate in St. Charles; that the plaintiff claims an interest therein; that all the furniture and furnishings in their home were purchased by the plaintiff with her own funds; that she claims the same as her separate property; that the parties own a 1948 Chrysler automobile, in which the plaintiff claims an interest.

The prayer for relief is that the defendant make full and complete answer; that he be required to make proper and suitable provision for her support; that he be required to pay her suit money and attorney's fees, and for support during the pendency of this suit; that the rights and claims of the parties to the property aforesaid be adjudicated by the court, and all necessary orders to be entered by the court in the determination thereof, and for general relief.

The defendant filed his answer, admitted that the parties were married and were actual residents of St. Charles in Kane county, Illinois. He denied all other allegations of the complaint.

Paragraph 8 of the answer admits that the parties hereto appear as joint tenants of record of the real estate described, yet in equity said property is the individual property of defendant; that none of the funds of the plaintiff went into the purchase, upkeep or improvement thereof; that same was purchased by defendant with his own funds prior to the marriage; that the 1948 Chrysler sedan is the sole property of defendant; that plaintiff contributed nothing in the purchase or maintenance of same, but it was purchased from defendant's own personal funds; denies that plaintiff has any interest in said real and personal property; denies that the furniture and furnishings

were purchased by plaintiff and are her separate property, or were purchased from her separate funds; alleges that said furniture and furnishings were purchased from the funds of the defendant, but in the possession and control of plaintiff; calls for full and complete accounting of all moneys received by the plaintiff from the U. S. Government allotment checks and U. S. Bonds forwarded to the plaintiff by the defendant while in the Armed Services in World War II; and calls for full and complete accounting of all rentals received by plaintiff while defendant was in the Armed Service, and of all funds and securities of defendant as his own personal property, but in the custody and control of plaintiff.

The case was submitted to the court without a jury that found the issues in favor of the plaintiff and adjusted the rights of the parties to some extent, and ordered the defendant to pay fifty dollars a month for the support and maintenance of the plaintiff and made other orders in regard to the disposition of the automobile, insurance and taxes on the residence and gave the plaintiff the right to use the residence. It is from this decree that the appeal has been perfected.

From a reading of the evidence as abstracted, there is no doubt that there were arguments back and forth between the parties and especially in regard to a lady named Anderson. At the time the defendant left the home he left a note which is as follows: "Sorry it had to be thise-way Ruby but i can't take it any longer. good by Ruby." There is no question but that the defendant voluntarily left the home in which they were residing. He claims that his wife was jealous of Miss Anderson and that was usually what the arguments were about. The evidence does not disclose that there were any improper relations between the parties, but

it is not denied that Miss Anderson would drive by the house frequently and blow the horn of her auto and wave towards the house and this was irritating to Mrs. Ribergaard.

It is insisted by the defendant that the plaintiff is not entitled to separate maintenance, because she did not take Mr. Ribergaard back and try to live with him. The evidence of appellant as abstracted shows the following: ''I went looking for her in Elgin. She came to me in Aurora and St. Charles. She knew where to find me in St. Charles. In Aurora it was more of a chance. I don't think she looked for me in Aurora. She saw me and went up and talked to me. I didn't go chasing her to talk to her. She asked me why I left and asked me to come back. In Aurora and St. Charles, on condition. She said: 'You come back or I will take everything that is there.' Those were the words she used. She wanted to know why I left. Wanted me to come back. I said 'I won't come back now.' ''

■ The evidence is bare of any offer of Mr. Ribergaard to come back and live with his wife after he left the home and the note as heretofore quoted. We find no merit in the contention that the plaintiff refused to take the husband back and live with him.

It is insisted by the appellant that the court erred in not allowing him to show what happened between Jake Nesler and the plaintiff. It is claimed this offer was made for the purpose of showing that the door was closed to reconciliation after the separation. The record shows that the defendant's answer to the question who was she with at the time, of how many times he had seen his wife after the separation as follows: ''Q. Who was she with at the time you saw her? A. She was with her sister and brother and Jake Nesler. Q. On all three of these occasions? A. Yes. Q. Where were they? A. In his automobile—at her place—

104

one time they were getting in his car at their place." Later on then after saying he had seen them together three times, this question was asked. "Q. Up to that time had you made up your mind that you would not live with your wife again, up to that next time you saw her with Nesler? A. Not definitely. Q. After you saw her the third time with Nesler, what was your attitude toward going back? A. I was not going back." On all three of the occasions that the appellant saw the appellee she was with her sister and her brother and Mr. Nesler; that the two women were sitting in the back seat and the two men in the front seat of the car. There is no evidence whatsoever that anything was wrong on any of these three occasions.

██ It is our conclusion that the court properly found that the defendant was living separate and apart from the plaintiff without her fault and entered a decree of separate maintenance.

 It is insisted by the appellant that the court erred in adjudicating the rights of the parties, as he had no jurisdiction to do so in a separate maintenance suit. He cites two Appellate Court cases that we think correctly state the law that ordinarily this cannot be done, but under the pleadings of this case an entirely different question arises. The plaintiff asks for an adjudication of the rights, and the defendant by his answer also asks for an adjudication of the rights of the parties and this would give the court jurisdiction then to adjudicate and adjust the rights of the property between them. However, the court did not adjust the rights of the parties so far as the real estate was concerned. No doubt it is the usual rule that in a separate maintenance suit that property rights should not be adjusted as between the parties. *Rasmussen v. Rasmussen,* 334 Ill. App. 308; *Bennett v. Bennett,* 344 Ill. App. 221; *Hopper v. Hopper,* 314 Ill. App. 572. The

first case that has been called to our attention that property rights could be adjusted in separate maintenance suits was *Decker v. Decker,* 279 Ill. 300, but in that case the plaintiff asks for an adjudication of the property rights, and the defendant recognized it as being the right by introducing evidence to dispute her rights to any of the property. In *Olmsted v. Olmsted,* 332 Ill. App. 454, the court commented upon the *Decker* case and therein we find the following: ''In the Decker case the plaintiff in her bill for separate maintenance asked for a settlement of the property rights of the parties and for an accounting between them. The defendant in his answer not only did not question the right or power of the court to decree a settlement but he apparently was satisfied to have his rights determined in that proceeding, and during the trial both parties offered evidence in support of their respective claims.'' In the present case the defendant not only introduced evidence in regard to the rights of the parties to the property, but asked for it in his answer. It is our conclusion that the court properly adjudicated the rights of the parties, as set forth in the decree.

 In the decree the court allowed the plaintiff $1,000 for attorney's fees and it is now insisted by the appellant that this is grossly excessive. The record shows that the attorney was engaged five days in the trial of the case and also attended a hearing taking depositions for the trial. There was no evidence offered in regard to the value of these services. In the *Rasmussen v. Rasmussen* case *supra,* the Appellate Court quoted from *Metheny v. Bohn,* 164 Ill. 495, and states: ''In taxing such fees the chancellor should exercise his own judgment, and not be wholly governed by the opinions of attorneys as to the value of their services. He has the requisite skill and knowledge to form some idea as to what is a fair and reasonable compensation,

and he should exercise that judgment. He should, no doubt, consider the opinions of witnesses and evidence of the sum usually charged and paid for such services, but should not be wholly controlled by the opinions of attorneys as to their value.''

█ It is our conclusion that the court should have heard evidence in regard to the attorney's fees and while exercising his own judgment also consider what the attorneys might say was a reasonable fee to be allowed in such cases. The decree of the trial court is hereby affirmed in all respects except as to the attorney's fee. Decree affirmed in part and reversed in part, and remanded to the trial court with directions for further proceedings in accordance with the views expressed in the opinion, costs to be taxed against the appellant.

*Affirmed in part and reversed in part, and remanded with directions for further proceedings in accordance with the views expressed in the opinion.*