Thomas Flynn *et al.*, Plaintiffs, *v.* Edmund J. Kucharski, County Treasurer, *et al.*, Objectors-Appellants—(William J. Harte *et al.*, Petitioners-Appellees.)

(No. 58832;

First District (4th Division)—December 19, 1973.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner and Henry A. Hauser, Assistant State's Attorneys, of counsel), for appellants.

James P. Chapman, of Chicago, for appellees.

Mr. JUSTICE ADESKO delivered the opinion of the court:

This is an appeal from a trial judge's award of attorneys' fees of $750,000 to William J. Harte and Kevin M. Forde, who successfully represented plaintiffs in a class action for declaratory judgment, an accounting, and other relief brought by plaintiffs as residents and taxpayers of the City of Chicago and Cook County, Illinois. The factual background of this litigation can be summarized as follows:

Plaintiffs challenged the constitutionality of the method of tax collection and distribution in effect in Illinois and Cook County as fixed by statute. (Ill. Rev. Stat. 1967, ch. 53, par. 55.6) Taxpayers who owned property within the City of Chicago paid their taxes to the County Collector who was authorized to deduct a commission of 1½ per cent on all monies collected, except that the maximum commission on money collected on behalf of "incorporated cities, villages and other municipalities" was limited to one per cent. Three-fourths of one per cent was further allowed as commission on funds paid over to him by township collectors. (Ill. Rev. Stat. 1967, ch. 53, par. 39.) These commissions were deposited in the general corporate fund of Cook County by the County Collector.

Taxpayers who owned property within Cook County but outside of the City of Chicago had the option of paying their taxes to the County Collector under the scheme outlined above or they were allowed to pay their taxes to the township collector of the township in which their property was located. The township collector was allowed a commission of 2 per cent on all money collected by him. The township collector could retain a specified amount as compensation and for expenses if authorized. The section then provided:

"After payment of the foregoing amounts to the town or district collector as compensation for his services, the excess of the commission allowed shall be paid into the town treasury, except that in townships comprised of only one village or city, the corporate limits of which are coextensive with the corporate limits of the township, the excess shall be paid into the village or city treasury."
Ill. Rev. Stat. 1967, ch. 53, par. 55.6.

Plaintiffs' objection to this section was that the commissions deducted by the County Collector were deposited in the general corporate fund of Cook County, for the use and benefit of all the residents of Cook County. In contrast to this, the excess of the 2 per cent commission, after the salary and expenses of the township collector were deducted, was given to the particular township for local, and not county-wide usage. They contended that this procedure violated the uniformity provisions of the Illinois Constitution (Art. IX, sections 9 and 10), the due process clause of the Illinois Constitution, and the due process and equal protection clauses of the United States Constitution.

Plaintiffs also objected to the commission system of both the Cook County and township collectors. They argued that these commissions greatly exceeded the cost of the collection of the taxes in question.

The circuit court held this section (Ill. Rev. Stat. 1967, ch. 53, par. 55.6) to be unconstitutional as it related to the commissions paid to township collectors and ordered that all these taxes in Cook County thereafter be collected by the Cook County Collector. Defendants, the County Collector of Cook County and thirty township collectors in Cook County, appealed directly to the Illinois Supreme Court, which affirmed the order of the circuit court and remanded the cause for further proceedings. *Flynn v. Kucharski*, 45 Ill.2d 211, 258 N.E. 329.

The Circuit Court, following this remand, ordered that all funds which were in the possession or control of the townships on December 15, 1969 (the date of the original decree) be turned over to the designated trustee, American National Bank & Trust Company. (Funds actually expended prior to December 15, 1969, did not have to be paid to the trustee.) The trustee was then to turn this fund over to the County Collector of Cook County to be deposited in the corporate fund of Cook County after the court had an opportunity to entertain petitions for fees and costs and had deducted these from the fund. The court did not consider the question of reasonableness of the rate of commission charged by the Cook County Collector. The defendants appealed and the plaintiffs cross-appealed this order which was subsequently affirmed in part but reversed and remanded to the circuit court for consideration of the question as to the reasonableness of the rate of commission charged. (*Flynn v. Kucharski*, 49 Ill.2d 7, 273 N.E.2d 3.) A third appeal was taken after a denial of a motion by certain of the township collectors to set aside the order of the Circuit Court. This denial was upheld by the Illinois Supreme Court. *Flynn v. Kucharski*, 53 Ill.2d 88, 290 N.E.2d 1.

Petitioners filed their petition for attorneys' fees on March 22, 1972. Objections to this petition for fees were filed, followed by objector's mo-

tion to dismiss the petition. The motion was denied by the judge and a hearing on the petition began on November 17, 1972. At the end of the hearing, attorneys' fees of $750,000 were awarded out of the fund which then totaled more than $4,500,000.

Objector appeals this award, contending that:

"(1) The character of the fund is such that attorneys' fees may not be awarded from it; and

(2) Even if an award of attorneys' fees was proper, the amount set by the trial judge was excessive."

Objector first contends that no attorneys' fees may be paid to petitioners from the fund held by trustee. He argues that:

"Where as here, the fund is composed entirely of collected tax monies, and where, as here, the fund is not to be distributed to the class but rather to a taxing body, then no attorneys' fee [sic] may be paid from that fund."

The fund in this case is characterized by objector as being unique and it is urged that the award of attorneys' fees from it was an abuse of discretion on the part of the trial judge.

■■ The general rule is that in the absence of statutory authority and where no fund has been created or preserved, a taxpayer is not entitled to an allowance of counsel fees. (*In re Wellhofer*, 16 N.J. Super. 60, 83 A.2d 827; *Southern v. Beeler*, 183 Tenn. 272, 195 S.W.2d 857; *Gosso v. Hart*, 123 Ore. 67, 261 P. 80.) Further, the simple fact that a fund exists or will exist is not sufficient to allow a court to authorize that attorneys' fees be paid out of it. The court must also have constructive custody or control of the fund created or preserved. *Von Holt v. Izumo Taisha Kyo Mission of Hawaii*, 44 Hawaii 147, 355 P.2d 40; *Milster v. City Council of Spartanburg*, 68 S.C. 243, 47 S.E. 141.

The Illinois Supreme Court followed the general rule noted in the above decisions in *People ex rel. Stephens v. Holten*, 304 Ill. 394, 136 N.E. 738. The original action there was a suit in equity against *Holten* and his sureties on his official bonds as City Treasurer of East St. Louis and ex-officio collector of the town of East St. Louis, claiming that he had failed to turn over and account for taxes collected by him in his official capacity. The suit was brought by certain taxpayers on their own behalf and on behalf of other taxpayers similarly situated, to recover these tax funds for the use of the City of East St. Louis. The circuit court dismissed this suit, but was later reversed and the cause was remanded for further proceedings. (*People v. Holten*, 287 Ill. 225, 122 N.E. 540.) Upon remand of the cause, a petition for allowance of fees was filed as well as for an attorney's lien upon the fund when collected. The

petitions were based on contracts entered into by petition and certain taxpayers who were plaintiffs in the original action.

The first question before the court was whether the Attorney's Lien law applied to actions and funds of the nature presented in this action. In a case of first impression in Illinois, it was decided that a taxpayer had no authority to contract for the disposition of a public fund when collected, so the Attorney's Lien law did not apply. Petitioner also argued, however, that since it had been established that taxpayer had the right to institute suit to recover public funds, it would be inequitable to force the "public spirited" taxpayer to bear the cost of litigation himself and not to charge the fund recovered with the expenses of its collection. Notwithstanding the validity of the contract therefore, a court of equity, having control of the fund, could and should order that the attorney's fees be paid as an expense of collection before the fund was turned over to the municipality.

The court agreed with the position taken by petitioner as far as the general rule of law, but not with its application to the facts of the case before it. The court stated:

"* * * Had there been a judgment or decree recovering this fund there would be much force in counsel's argument. A court of equity should do all in its power to reasonably compensate those who seek to protect the public by compelling the return of public funds. There is no provision in equity, however, permitting a court, in the exercise of equitable powers, to declare an allowance of fees and the payment of them out of a fund of this character before the fund comes under the control of the court. There has been no judgment or decree rendered in the main case finding any amount due from Holten and his bondsmen. It was held in the *Holten case* that a right of recovery existed by the action of the tax-payers; that on the record there made Holten and his bondsmen were shown to be liable; that the municipalities had no authority to settle the claims with Holten and his bondsmen as was attempted to be done, and that therefore, it was error to dismiss the bill. This does not amount to a judgment or decree finding an amount due. The case was remanded without directions. This opened the case for pleading, if desired. [citation] We are unable to say now that the circuit court should, on remandment, have entered a judgment or decree finding an amount due. There is no such fund at this time in the control of the court from which an allowance of reasonable attorney's fees could be made." 304 Ill. 399.

For this reason the order of the circuit court dismissing the petition for

fees as premature and the judgment of the appellate court upholding that order were affirmed.

■■ The existence of a fund created or preserved by the efforts of a taxpayer and the control of this fund by the court is clearly the key factor in determining whether attorneys' fees may be properly paid out of the fund before payment is made to the governmental body. This is reflected in the decision in *Holten*, where the court held the petition for fees to be premature, rather than improper. Where a fund was brought into court by taxpayers in a class suit and such fund was under the control of that court, the payment of attorneys' fees out of these funds has been held to be correct in several other jurisdictions. In *Council of Village of Bedford v. State ex rel. Thompson, Hine & Flory*, 123 Ohio St. 413, 175 N.E. 607, an award of attorneys' fees in a case factually similar to the one now before this court, was sustained. Quoting extensively from the opinion of the court in the leading case of *Fox v. Lantrip*, 169 Ky. 759, 185 S.W. 136, the court in *Bedford* held that even though the monies were to be paid directly to the village treasury, that the award of attorneys' fees was proper.

> "Such a fund, * * * created in a court action and still under the control of the court, is in our opinion subject to the court's power, in the exercise of its jurisdiction, equitable in character, to set aside such portion of that fund as is incident to the expense involved in its creation. The fact that the village received the money direct from [defendant] and receipted the docket of the common pleas court, did not make the fund less liable to the lien the court had imposed upon it. It was recovered through the medium of the court and was received subject to its order relating thereto." 123 Ohio St. at 424, 175 N.E. at 610.

See also, *Horner v. Chamber of Commerce of the City of Burlington*, 236 N.C. 96, 72 S.E.2d 21; *Shillito v. Spartunburg*, 214 S.C. 11, 51 S.E.2d 95; and *Carabajal v. Candelaria*, 65 N.M. 159, 333 P.2d 1058.

Objector has provided little support for his argument that the award of attorneys' fees from the fund in the instant case was improper. He has cited two cases as authority for his position. (*Hoffman v. Lehnhausen*, 48 Ill.2d 323, 269 N.E.2d 465, and *Rosemont Building Supply v. Highway Trust Authority*, 51 Ill.2d 126, 281 N.E.2d 338.) In both cases, however, no fund from which attorneys' fees could have been paid was present. In *Hoffman*, the court stated that attorneys' fees could not be paid since no fund existed and the court knew of no authority that would allow the court to order governmental bodies to divert from tax funds an amount fixed as attorneys' fees. The trial court in *Rosemont* set an amount to be paid as attorneys' fees and ordered the defendants in their capacities as elected officials of the State of Illinois jointly and severally,

to pay the sum set to plaintiffs' attorneys. The court again noted that, absent a fund brought into court by plaintiffs or plaintiffs' class, that an award of attorneys' fees would be improper.

The case at bar can easily be distinguished from the two cases above. In *Hoffman* and *Rosemont* the court was being asked to create a fund solely for the payment of attorneys' fees. In the instant case a fund exists, under the control of the trial court, which was brought before the court through the efforts of plaintiffs. The judge ordered that this fund, after deduction of an amount set for attorneys' fees, be deposited in the general corporate fund of Cook County.

Finally, the order creating this fund and its ultimate disposition was affirmed in the second appeal of this case to the Illinois Supreme Court. (*Flynn v. Kucharski*, 49 Ill.2d 7, 273 N.E.2d 3.) The opinion in that case took note of the order of the judge which provided, *inter alia:*

"* * * that upon the approval of the trustee's report the court *shall entertain petitions for fees and costs and after deduction thereof,* all funds in possession or control of the trustee shall be disbursed to the County Collector of Cook County and deposited in the corporate fund * * *". 49 Ill.2d 10. (Emphasis added.)

Though attorneys' fees were not at issue in that appeal, the order of the trial court was affirmed and remanded solely for consideration of the statutory commissions. There was no further question regarding the fund held by the trustee or its disposition.

■■ We are of the opinion that an order awarding attorneys' fees from a fund brought into court by plaintiffs, such fund being under the control of the trial court, was proper in the instant case.

Objector next argues that even if an award of attorneys' fees from the fund held by the trustee was proper, that the award of $750,000 was excessive and as such should be reduced by this court upon review.

The judge's memorandum opinion makes it quite clear as to what factors were considered by him as the basis for setting the amount of the fee. The opinion begins with a statement that the court had been concerned with the subject matter of this litigation for more than three years and that due to "* * * this court's intimate knowledge of the case, the court feels eminently qualified to fix a reasonable fee." The judge then noted the factors he would consider:

"In arriving at a reasonable fee in a case of this kind the courts have held one should consider the following factors though not necessarily in the order enumerated:

a. The novelty, complexity and difficulty of the case.

    b. The contingent nature of the fee.

    c. The benefit to the class and the public.

    d. The skills and qualification of counsel.

    To these could be added other factors such as time and labor expended; personal knowledge of the court as to conferences, arguments, hearings and briefs; the responsibility undertaken and others."

(The factors used by the judge in determining the amount to set as the fee have been utilized by many courts. (*Hofing v. Willis*, 83 Ill.App.2d 384, 227 N.E.2d 797; *Angoff v. Goldfine*, 270 F.2d 185 (1st Cir. 1959); and *State of Illinois v. Harper & Row Pub. Inc.*, 55 F.R.D. 221 (N.D. Ill. 1972).) Objector argues that, nonetheless, the trial judge erred in granting an award of $750,000 since petitioners did not keep exact records as to the time spent each day in this litigation, that the testimony of objector's expert witness was disregarded, and that the benefits resulting from this case were unclear or insubstantial.

■■ It is well settled that the award of attorneys' fees is a matter within the discretion of the trial court, and that this award will not be disturbed unless there has been a clear abuse of that discretion. (*Central Standard Life Insurance Co. v. Gardner*, 36 Ill.App.2d 292, 183 N.E.2d 881; *Golstein v. Handley*, 390 Ill. 118, 60 N.E.2d 851; *Norton v. Jordan*, 360 Ill. 419, 196 N.E. 475.) Underlying this rule is recognition that a trial judge is in a vastly superior position to determine what is a just and reasonable fee. The trial judge has participated in the original action from which the question of the fees arises and he is in a better position than a reviewing court to determine what amount will properly compensate the attorney for his efforts. This rule seems particularly appropriate in a case where the litigation was as lengthy and complicated as in the case at bar.

    Objector, with little basis on the record to support his contentions, states that the petitioners' estimate of the time spent on the case was an exaggeration and suggests a much lower figure. Based on this lower figure and the computation of their expert witness as to what he believed to be the proper amount of compensation, objector suggests a figure of $300,000 as a reasonable compensation for petitioners.

    We are of the opinion that what objector argues is an abuse of discretion is simply a matter of conflicting testimony as to the time and labor expended and as such it was a question to be decided by the trial court and such decision will not be disturbed unless it is against the manifest weight of the evidence. *Brown v. Zimmerman*, 18 Ill.2d 94, 163 N.E.2d 518.

The correct rate at which the attorney is to be compensated is also a matter within the discretion of the trial court. The fact that objector's expert suggested a certain amount as reasonable compensation is not binding upon the court, and the "disregard" of his opinion is hardly an abuse of discretion by the trial judge. As the court stated in *Richheimer v. Richheimer*, 59 Ill.App.2d 354, 208 N.E.2d 346:

> "It has been the rule in this state for many years that courts will not be bound by the opinion of attorneys as to what constitutes reasonable attorneys' fees. The courts may use the knowledge they have acquired in the discharge of professional duties as to the value of legal services rendered. (*Golstein v. Handley*, 390 Ill. 118, 60 N.E.2d 851; *Stritar v. Stritar*, 48 Ill.App.2d 332, 199 N.E.2d 274.) While [the trial judge] should have the opinion of other lawyers and should hear the evidence, he should also use his own judgment, having the requisite skill and knowledge to form some idea of what is reasonable compensation. *Ribergaard v. Ribergaard*, 349 Ill.App. 99, 110 N.E.2d 89." 59 Ill.App.2d 365-366.

■■ Objector's final argument is that the benefits produced by this lawsuit are unclear and speculative. The opinion of the trial judge states that the fund secured by the plaintiffs and held by the trustee amounted to more than $5,000,000, and approximately $15,000,000 more went directly into the treasury of Cook County. Numerous other benefits and savings have been secured for plaintiffs' class, so we find no merit in objector's contention that the fee award is excessive in light of the benefits actually produced.

■■ We find, therefore, that the trial judge's award of $750,000 in attorney's fees to petitioners was proper and amply supported by the record before this court.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is hereby affirmed.

Judgment affirmed.

DIERINGER and JOHNSON, JJ., concur.