Mae Stritar, Plaintiff-Appellee, v. Joseph E. Stritar, Defendant-Appellant, Charles O. Sandberg, et al., Richton Park Lumber Company, Inc., a Corporation, and Sidney R. Olsen, Registrar of Titles of Cook County, Illinois, Defendants-Appellees.

Mae Stritar, Plaintiff-Appellee, v. Joseph E. Stritar, Defendant-Appellant, Bank of Homewood, Defendant-Appellee, and Eugene C. Jach, a/k/a Eugene C. Jachimowski, Defendant-Appellee.

Gen. Nos. 49,250, 49,271.

First District, First Division.

April 6, 1964.

Essington, McKibbin, Beebe & Pratt, of Chicago (Herman L. Taylor, Julian H. Hardy, of counsel), for defendant-appellant.

Louis Jaffe, of Chicago (Donald S. Jaffe, of counsel), for plaintiff-appellee. Arthur Abraham, of Chicago, for respondent-appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

Plaintiff, Mae Stritar, on August 8, 1962, filed two separate suits against her husband, Dr. Joseph E. Stritar, in the Superior Court of Cook County, one for divorce and the other for partition of jointly owned real estate. The actions proceeded separately to conclusion. Two appeals by the defendant husband were consolidated here. He seeks, in one, to vacate the divorce decree, and in the other, to reduce the partition suit attorneys' fees. For convenience and clarity, the appeals are disposed of separately.

### Appeal No. 49271.

In the divorce action, plaintiff alleged desertion by defendant on April 11, 1961. On August 15, 1962, by agreement, an order was entered allowing plaintiff $125 per week as temporary alimony and $2,500 to Louis Jaffe, her attorney, as temporary solicitor's fees. On September 4, 1962, defendant answered, denying desertion by him and charging plaintiff with desertion.

On September 24, 1962, new counsel was substituted of record for defendant, and the parties commenced negotiations which resulted in a settlement agreement dated October 12, 1962. The agreement provided for the disposition of the divorce and partition suits. The divorce action was to be heard on complaint and answer as a default matter. The agreement further provided that the defendant should deposit in escrow the attorneys' fees fixed by the court in the divorce case, including an amount for his attorney, Eugene C. Jach, equal to all the fees fixed for Louis Jaffe, plaintiff's attorney.

At the divorce hearing on November 8, 1962, Louis Jaffe appeared for plaintiff, and Eugene C. Jach appeared for defendant. The evidence includes the testimony of plaintiff and a corroborating witness.

Plaintiff was cross-examined. The property settlement agreement was introduced into evidence, and a discussion was had between court and counsel about attorneys' fees. Counsel for defendant called the court's attention to the terms of the agreement in evidence that he was to be paid a sum equal to that of plaintiff's attorney, and the chancellor indicated approval.

The divorce decree was entered November 15, 1962, on the ground of defendant's desertion. The decree found defendant was a physician with an income of $26,000 to $30,000 a year. The property settlement agreement was found to be fair and reasonable and was incorporated in the decree. A total fee of $5,000 was ordered paid by defendant to plaintiff's counsel, and the same fee to defendant's attorney. It was further found that plaintiff and defendant owned jointly their Homewood residence, a vacant lot in Flossmoor, and a half interest in a medical building in Homewood. Defendant was decreed to be the sole owner of the three parcels of real estate and was directed to execute and deliver to plaintiff purchase money mortgages totaling $25,500, secured by the residence and vacant lot. The decree ordered permanent alimony payments of $100 per week for 17 weeks and $125 a week thereafter, and the court retained jurisdiction until the terms of the decree had been fully performed.

On December 14, 1962, an order was entered granting leave to defendant to file his petition to vacate the divorce decree and to substitute new counsel of record, his instant attorneys. Leave to answer the petition was granted to plaintiff and to respondent, Eugene C. Jach, defendant's former attorney.

The petition of defendant to vacate the decree of divorce alleges, in substance, (1) that he was not properly represented at the preliminary hearing on tem-

porary allowances by his original attorneys, and that he was importuned to retain his second attorney by an office associate; (2) that plaintiff was guilty of desertion and not defendant, and that he was at all times a faithful and proper husband, and had forgiven numerous acts which would have given defendant the right to secure a divorce; and (3) that when he signed the property settlement, including the provision that the divorce action be heard as a default matter, he "did not realize the implications thereof and that the divorce might be invalid as a fraud on the court; and that if, by agreeing to a default hearing, it might be charged that he aided and abetted the securing of a fraudulent divorce, that he now wishes to purge himself thereof and hereby seeks to do so."

The petition further states that the answer filed by his first attorney set forth the true facts, and that he informed his second attorney of such facts; that his earnings and financial status were misrepresented, and the fees allowed the attorneys were exorbitant and unjust and the alimony allowance is inequitable and unreasonable. The prayer of the petition is that the divorce and partition suits be consolidated, and that the divorce decree be set aside and plaintiff's complaint be dismissed without costs, and no fees allowed to any attorney of record, or, in the alternative, (1) fix a reasonable fee for plaintiff's attorney; (2) fix no fee for Eugene C. Jach, defendant's former attorney; and (3) "reduce said alimony payments to a just and reasonable amount."

Both plaintiff and defendant's former attorney, Jach, filed detailed answers to defendant's petition to vacate. Plaintiff denied all of the allegations of defendant's petition and alleged that she had numerous other grounds to obtain a divorce, such as cruelty.

The answer of Eugene C. Jach alleged that defendant was fully informed at all stages of the negotiations and proceedings, and it was determined that it was to the best interest of defendant "to work out a favorable property settlement agreement between the parties and to interpose no defense to the complaint in the form of testimony."

On March 15, 1963, defendant was granted a full and extended hearing on his petition to vacate. He was questioned at length by the court and then by Mr. Jach, his former attorney. Defendant stated that he was 60 years old, a medical doctor and a Ph.D. The agreement had been left with him for a full week, and he read it two or three times. He understood its financial aspects, although he denied knowing that equal fees were to be paid by him to the attorneys for both sides. He was told by Mr. Jach that if he chose to contest the action he could have won, but after discussing the extent and cost of the prospective litigation, he decided to enter into the agreement.

The chancellor refused to permit defendant "to put in some more testimony to show the actual state of the divorce here," because "we have gone thoroughly into the surrounding circumstances."

In considering the merits of this appeal, we note, initially, that on a motion filed within 30 days after the entry of a judgment, the decision to vacate or modify lies within the sound discretion of the trial court. It is only where there has been an abuse of discretion that a reviewing court will interfere. Ewert v. Ewert, 41 Ill App2d 161, 166, 190 NE2d 147 (1963).

■ ■ We agree with the contention of defendant that it is not the policy of Illinois to grant collusive divorces, and where the State is an interested party, "the contributing guilt of the parties to the suit will not bar the granting of relief." (Collins v. Collins, 14

■■■■■■■■■■

Ill2d 178, 184, 151 NE2d 813 (1958).) The chancellor considered at length this policy and, in noting that defendant was not deceived or prevented from having an adversary trial on the merits and was estopped to plead his own misconduct, observed:

> "Even though in term time the question of whether or not, notwithstanding the interests of the state in these matters,—whether or not the stability of decrees of divorce can be impaired. There would never be any finality to our orders and judgments if they can come in like that, even in term time. If everybody was dissatisfied after a decree was entered, or a judgment was entered, they could come in and set it aside on the grounds that they feel it should be otherwise, we would never be able to dispose of matters in this court."

In Van Dam v. Van Dam, 21 Ill2d 212, 219, 171 NE2d 594 (1961), our Supreme Court said, "the rules with respect to the finality of judgments apply with full force and effect to decrees of divorce," and quoted with approval from 2 Bishop on Marriage, Divorce and Separation, § 1533:

> "The matrimonial status of the parties draws with and after it so many collateral rights and interests of third persons, that uncertainty and fluctuation in it would be greatly detrimental to the public."

This case, therefore, presents two competing considerations: On the one hand, the interest of the State in prevention of collusive divorce, and on the other hand, the interest of the public in preserving judgments. Since we believe that the court's power to vacate should be exercised only in the furtherance of justice and in circumstances calling for equitable relief, we believe the chancellor was correct. This is

not a case of misunderstanding or fraud on one of the parties, as in Danforth v. Danforth, 105 Ill 603 (1883), but rather one in which both parties were of superior intelligence and fully cognizant of the consequences of their acts. Both parties are elderly, and no minor children are involved.

A similar situation appears in Sikkema v. Sikkema, 5 Ill App2d 484, 125 NE2d 852 (1955), where a divorce decree was entered, and the husband moved to vacate within 30 days on the basis that no grounds for divorce existed. The wife admitted the collusive agreement. In refusing to vacate the decree, the court said:

> "In the instant case the party making the application to vacate the decree is not an innocent party, nor was he in any way deceived. He, acting through an attorney of his own choosing, entered his appearance in the original proceeding and he, himself, signed his answer to his wife's complaint for divorce. Previously he had executed a property settlement and upon the filing of the complaint, he stipulated that the case could be heard at once. He has had his day in court. He was not prevented from making any defense he desired to interpose and the terms of the decree, which he was instrumental in procuring, were the terms which he, himself, desired."

We think these remarks apply here.

█ Defendant further contends that "plaintiff's own testimony does not entitle her to a divorce," and complains that it was error for the chancellor to refuse to hear any evidence that plaintiff did not have grounds for divorce. As the motion to vacate was filed within 30 days from the entry of the decree, we believe it was within the sound discretion of the chancellor "to look into the evidence" in addition to the pleadings and decree. In reviewing the divorce

action, evidence and pleadings, all included in the record here, we find the trial court had jurisdiction of the parties and of the subject matter of the proceeding, and the evidence presented comes within the facts and pronouncements of Karman v. Karman, 24 Ill App2d 123, 164 NE2d 521 (1960). Accordingly, we find no abuse of discretion by the chancellor in limiting the hearing on defendant's petition to vacate to the question and effect of collusion, knowingly and voluntarily participated in by defendant.

■ Defendant's further contention that the permanent alimony and attorneys' fees allowed are excessive is without merit. The amount of the alimony was in accordance with the settlement agreement. In view of the income of defendant and the amount of time obviously required in the extensive negotiations between the parties, we find no abuse of discretion here, either in alimony or attorneys' fees. (Ylonen v. Ylonen, 2 Ill2d 111, 117 NE2d 98 (1954).) Neither are we persuaded that it was reversible error to set the fee of counsel for defendant. This was provided for in the settlement agreement introduced in evidence at the divorce hearing, and we find no valid reason for disturbing this allowance.

We conclude that on the facts presented here, the chancellor was well within the exercise of sound discretion in denying defendant's petition to vacate the divorce decree, and for the reasons given the order appealed from is affirmed.

## Appeal No. 49250.

■ In the partition suit, three parcels of real estate are involved, and the only issue here is whether the $5,000 fee allowed to plaintiff's attorney is excessive. The settlement agreement of October 12, 1962, provided that the partition proceedings were to proceed only to a decree of partition, a real estate ap-

praisal, and the adjudication of attorneys' fees. Defendant was to pay all costs and expenses of the partition suit, including attorneys' fees, except that one-quarter of the partition expense was to be borne by plaintiff by endorsement on proposed purchase money mortgage notes to be given her. The appraisal of the three parcels totaled $99,000—the residence in Homewood at $31,500, the medical building at $48,000, and the vacant lot at $19,500.

On November 8, 1962, a decree for partition was entered, and on November 9, the court, "upon a full hearing," found the sum of $7,000 to be a fair and reasonable fee for the attorneys for the legal services rendered, and directed that it be divided equally between them—$3,500 to Louis Jaffe, attorney for plaintiff, and $3,500 to Eugene C. Jach, attorney for defendant. The report of proceedings, in connection with the allowance of fees for plaintiff's attorney, contains the testimony of plaintiff's attorney, in which he details, at length, the time spent on the partition action, a total of 244 hours, and the representation to the court that the amount of the fees and the division was agreeable "on both sides."

On December 7, 1962, within 30 days of the order fixing the fees, defendant moved for leave to file a petition to vacate the fee order. The petition, subsequently filed by leave of court, included in detail the divorce proceedings and the alimony and fee allowances, and alleged that the partition suit and the divorce action should have been brought as one case, and that the total amount of fees sought in both proceedings was "$17,000, which is almost 25% of the value of the joint property owned by said Mae Stritar and this petitioner, and this petitioner has practically no other assets other than his medical equipment; that said fees should be considered in their entirety, and are many times the value of the services rendered and

should be refixed by this court in a reasonable amount." The prayer of the petition was for the consolidation of the two cases, that the fee order of November 9, 1962, be vacated and a new order entered providing for reasonable fees to plaintiff's attorney not in excess of $1,500, and denying all fees to defendant's attorney.

The answer of plaintiff to the petition included the report of proceedings of the fee hearing on November 9, 1962, and the report of the commissioners as to the appraisals. Eugene C. Jach, defendant's former attorney, also filed an answer. Hearings were had on February 11 and 20, 1963. No witnesses were sworn and no evidence was presented other than the settlement agreement of October 12, 1962. On February 21, 1963, the court entered an order denying the prayer for consolidation of the two causes of action, and modifying the order of November 9, 1962, allowed $5,000 "as and for plaintiff's attorney's fees in the above entitled cause." No fees are allowed to Eugene C. Jach, as attorney for defendant, without prejudice to any cause of action he may have against defendant for services in the partition suit.

Defendant contends that the $5,000 fee order is erroneous because there was nothing before the court to support the increase, and the original fee of $3,500, allowed to plaintiff's attorney, was grossly excessive and should have been reduced.

Initially, we find no merit in the argument by defendant that the trial judge might have "allowed the $5,000 fee with the expectation that Mr. Jaffe would split it with Mr. Jach as had been expressly provided in the order of November 9, 1962." In the absence of any evidence in the record on that point, it cannot be considered. Also, we note here, if the trial court believed that the situation presented warranted the modification of the original fee order, the court was

not bound by the opinion of defendant that the subse-
quent fee allowance should not be in excess of $1,500.
See Golstein v. Handley, 390 Ill 118, 125, 60 NE2d 851
(1945):

> "The amount to be allowed for attorneys' fees
> is so far in the discretion of the chancellor that
> in the absence of clear abuse of that discretion,
> this court will not interfere. It has been the rule
> in this State for many years that the courts will
> not be bound by the opinions of attorneys as to
> what constitutes reasonable attorneys' fees. The
> courts are responsible to litigants for the use of
> their own knowledge of the value of services ren-
> dered, and should and will take into consideration
> such knowledge."

This is the rule to be applied here.

Although the record here includes detailed testimony
as to the services performed and the value thereof,
defendant argues that "it seems impossible that such
an amount of time could have been devoted solely to
this simple consent partition case." Defendant would
require plaintiff's attorney to explain here the content
and need for the many and long conferences with his
client and defendant's counsel. This is the function of
proper cross-examination and, in its absence, we are
not required to conclude that plaintiff's attorney was
without professional competence and integrity. The
testimony of 244 hours of legal services stands with-
out contradiction, and the total appraised value of
$99,000 has not been assailed. We note, also, that by
the terms of the agreement, plaintiff must bear one-
quarter of these attorneys' fees. All of this evidence
was properly before the trial court at the second hear-
ing, to evaluate with sound discretion. (Ylonen v.
Ylonen, 2 Ill2d 111, 117 NE2d 98; Central Standard
Life Ins. Co. v. Gardner, 36 Ill App2d 292, 183 NE2d

881 (1962).) In the light of his extended experience in matters of this kind, we are not persuaded that it was improper or an abuse of discretion by the trial court to increase the original fee order without further evidence.

For the reasons given, the order providing for a $5,000 fee for plaintiff's attorney in the partition suit is affirmed.

Appeal No. 49250—Order affirmed.

Appeal No. 49271—Order affirmed.

BURMAN and KLUCZYNSKI, JJ., concur.