**Carolyn S. David, Plaintiff-Appellee, v. Albert David, Defendant-Appellant.**

**Gen. No. 52,654.**

First District, First Division.

November 4, 1968.

Cummings & Wyman, of Chicago (Austin L. Wyman, Jr. and Stanley M. Cahn, of counsel), for appellant.

Moriarty, Rose, Faccenda & Hultquist, of Chicago (Donald M. Rose, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

This is an appeal from a divorce decree in favor of plaintiff, Carolyn David. The decree reserved the question of alimony, directed the husband to pay child support of $60 per week, and awarded the plaintiff a sum of money equal to 33⅓% of the fair market value of certain stocks and one-third of the fair market value of defendant-husband's profit sharing plan with Sears Roebuck & Company.

The plaintiff-wife originally brought an action for separate maintenance. A hearing was held on July 14, 1966, and on the same day an order was entered by the court requiring the defendant to pay plaintiff $10 per week for temporary support, $40 per week for temporary child support, and $100 for temporary attorney's fees. Three months later, on October 14, 1966, plaintiff was given leave to file a complaint for divorce and on April 10, 1967, she filed a verified amended complaint for divorce. In paragraphs one through seven, inclusive, of her complaint, plaintiff alleged generally that the parties were married on July 26, 1958; that two children were born of the said marriage, Sandra David, age five and Mathew David, age seven; that on April 3, 1966, the de-

fendant struck her without provocation; that in fear of serious injury plaintiff removed herself from the marital home; and that as a result the plaintiff, without fault on her part, has lived separate and apart from the defendant without interruption and continuously for more than one year prior to filing the amended complaint for divorce. The plaintiff alleged in paragraph eight of her complaint that she was without sufficient funds to support herself and the two children and that the defendant was an able-bodied man capable of supplying suitable and sufficient support. In the plaintiff's prayer for relief she requested that in addition to her request for support, that the defendant be required to pay her a sum to be determined by the court representing a portion of the savings the parties acquired during their marital life.

The defendant filed a verified answer to plaintiff's amended complaint, denying only the allegations of paragraph eight of the complaint. The defendant also alleged in his answer that any savings which the parties had during their marital life were solely the result of defendant's employment, and that the plaintiff had not contributed to the savings.

The trial of the case commenced on April 17, 1967, before the court sitting without a jury. Both parties were present and represented by counsel. The plaintiff, called on her own behalf, testified that on April 3, 1966, the defendant "grabbed me by the arm and threw me against the wall and left a bruise on my arm and I hurt my head." The following morning, April 4, 1966, when her husband was leaving for work she told him "that unless we had some kind of . . . counseling or worked out our problems that I was leaving, and he said that if I left, I would go out the door with a knife in my back." The plaintiff then testified that she left the house that day and that she had lived separate and apart as a single person without fault on her part since April 4, 1966.

Virgil Kraft was then called to testify on behalf of the plaintiff. He stated that he was a clergyman associated with the Peoples Church of Chicago and that he had known the parties for between nine and ten years. Reverend Kraft said that on April 3, 1966, the parties scuffled or fought and that the defendant bruised the plaintiff's arm. When asked if the plaintiff gave the defendant any cause or provocation, Reverend Kraft said she had not. He also stated that the plaintiff had been living separate and apart from the defendant since April 4, 1966.

Carole Mosier was the last witness called by the plaintiff. She testified that if she were asked the same questions asked Reverend Kraft, her answers would be the same as those he gave. None of the witnesses were cross-examined and when the court asked defendant's counsel whether they had anything to present by way of defense, the answer was "no."

An order was entered on April 17, 1967, reciting in part that "the defendant not contesting the grounds for divorce, and the Court having heard testimony of witnesses, finds that the plaintiff has presented and proved by sufficient evidence that she is entitled to a Decree of Divorce on the grounds of Desertion and that a Decree of Divorce will be entered accordingly at the time the other matters in dispute are resolved. . . ." After further hearings held on June 13, 1967, and August 4, 1967, a decree was entered on August 7, 1967, granting plaintiff a divorce and finding among other things "[t]hat the defendant has been guilty of desertion of the plaintiff during their marriage, without cause or provocation therefor on the part of the plaintiff. That the defendant struck the plaintiff on April 3, 1966, causing her pain and suffering and threatened her with grievous bodily harm on April 4, 1966." The court also found that the

parties had not lived or cohabited together as husband and wife since April 4, 1966.

The defendant-appellant contends that the decree fails on its face to show any ground for divorce, nor does the evidence disclose any such ground. Furthermore, the defendant maintains that since the decree does not find that the defendant wilfully deserted or absented himself from the plaintiff without any reasonable cause for the space of one year, the finding can only be that the defendant is guilty of constructive desertion. The defendant argues that constructive desertion exists only where an innocent spouse leaves a spouse who is guilty of conduct which in and of itself constitutes a ground for divorce. In support of his contention, the defendant cites Coolidge v. Coolidge, 4 Ill App2d 205, 124 NE2d 1; Bramson v. Bramson, 4 Ill App2d 249, 124 NE2d 33; and Nusser v. Nusser, 4 Ill App2d 538, 124 NE2d 549.

In Coolidge, the chancellor entered a decree finding the defendant-husband guilty of cruelty and of constructive desertion. The Appellate Court reversed the decree. The Court found that the three acts of physical cruelty alleged in the plaintiff's amended and supplemental complaint were wholly uncorroborated and declared that the finding of cruelty was not supported by the evidence. Turning to the question of desertion, the Court said that the most the record showed was that the parties quarreled over money, religion and sundry other matters. This, the Court felt, was not sufficient to support the charge of desertion by the plaintiff who physically left the marital home. In the case at bar, however, the plaintiff left her home because the defendant threatened her with bodily harm and had shown by his actions the previous day that he was capable of carrying out his threat. For this reason we do not consider Coolidge to be applicable on the facts. This is also true of the other two cases cited by the defendant on this point.

106

■■ The defendant feels that "the trial court concluded that one act of physical cruelty and one threat by the defendant constituted such extreme and repeated cruelty as would justify the plaintiff deserting the husband." The defendant apparently overlooks the fact that the divorce decree clearly recites that the defendant was guilty of desertion without cause or provocation on the part of the plaintiff. The threat of April 4, 1966, provides ample support for the conclusion of the trial court that the plaintiff was justified in leaving the marital home because of the actions of her husband and that the defendant was in fact the deserting spouse. Stritar v. Stritar, 48 Ill App2d 332, 199 NE2d 274; Karman v. Karman, 24 Ill App2d 123, 164 NE2d 521; Jeffers v. Jeffers, 9 Ill App2d 572, 133 NE2d 727 (abstract); Mathews v. Mathews, 227 Ill App 465; Albee v. Albee, 43 Ill App 370, 1961 Ill L Forum 183. Although the defendant was present throughout the divorce proceedings he neither introduced evidence to contest the divorce nor denied he had threatened her with bodily harm on April 4, or that he struck her the day before causing her pain and suffering. We are satisfied that the evidence, although meager, was sufficient to establish that plaintiff had reasonable cause for leaving the defendant and that the court was justified in holding that under the circumstances the defendant was proven guilty of wilfully deserting the plaintiff without reasonable cause for the space of one year as provided in sections 1 and 8 of the Divorce Act (Ill Rev Stats 1967, c 40, pars 1, 8). Also, we find no merit to the contention that there is a fatal variance between the allegation in the complaint for divorce and the proof.

The adjustment of property rights, however, presents a more serious problem. The defendant contends that the trial court erred when it ordered him to pay the plaintiff $4,803 representing 33⅓% of the average fair market value as of June 13, 1967, of some 346 shares of

stock in various named corporations which were in the defendant's name when in the same decree the court reserved the question of alimony. The same error is present, the defendant maintains, in the award of one-third of the average fair market value of defendant's profit sharing plan with Sears Roebuck & Company to the plaintiff.

Section 17 of the Divorce Act (Ill Rev Stats 1967, c 40, § 1 et seq.) provides:

> Whenever a divorce is granted, if it shall appear to the court that either party holds the title to property equitably belonging to the other, the court may compel conveyance thereof to be made to the party entitled to the same, upon such terms as it shall deem equitable.

Section 18 provides:

> When a divorce shall be decreed, the court may make such order touching the alimony and maintenance of the wife or husband, the . . . support of the children, or any of them as, from the circumstances of the parties and the nature of the case, shall be fit, reasonable and just. The court may order the husband or wife, as the case may be, to pay to the other party such sum of money or convey to the party such real or personal property, payable or to be conveyed either in gross or by installments as settlement in lieu of alimony, as the court deems equitable. Irrespective of whether the court has or has not in its decree made an order for the payment of alimony or support, it may at any time after the entry of a decree for divorce, upon obtaining jurisdiction of the person of the defendant by service of summons or proper notice, make such order for alimony and maintenance of the spouse and the care and support of the children as, from the evidence and nature of the case, shall be fit, reasonable and just,

but no such order subsequent to the decree may be made in any case in which the decree recites that there has been an express waiver of alimony or a money or property settlement in lieu of alimony or where the court by its decree has denied alimony.

We agree with the defendant that the property award cannot be considered as a settlement in lieu of alimony as provided in section 18 because the question of alimony has been expressly reserved in view of the plaintiff's employment. Nor is this disputed by the plaintiff for she argues that the award of a lump settlement was not a settlement in lieu of alimony, but rather an award under section 17 of the Divorce Act. It is the plaintiff's contention that the court has the equitable power to provide a lump-sum payment in addition to reserving the question of alimony and that the award in the case at bar was given by the trial court because the court felt that under the circumstances the defendant was holding title to property which equitably belonged to the plaintiff.

The plaintiff cites the following three cases in support of her contention: Brosie v. Brosie, 329 Ill App 514, 69 NE2d 518 (abstract); Everett v. Everett, 25 Ill2d 342, 185 NE2d 201; and Imbrie v. Imbrie, 94 Ill App2d 60, 236 NE2d 381. In Brosie, there was testimony to the effect that the wife acted not only in the capacity of a farm wife, but also carried on work which ordinarily would have been done by a hired man. She shucked corn, helped mend the fence, assisted in the loading of livestock, did milking, plowed corn, and helped with the sheep shearing and numerous other farm chores. The Court found that by reason of her efforts, far beyond those of an ordinary housewife, she contributed substantially to the accumulation of the property on hand at the time of the separation.

In the Everett case, relied on by both parties, the undisputed evidence showed that the wife contributed $3,500 of her own funds towards the purchase of a home

and that title was jointly held by the husband and the wife. There was also evidence that plaintiff advanced monies to the contractor during the construction of a new residence; that she spent money for mortgage payments and that she used her own money for family expenses. The trial court gave the plaintiff-wife an equitable interest in the house and also ordered the defendant to transfer one-half of his stock to his former wife. The Court affirmed the granting of an equitable interest in the house, but reversed the stock transfer order stating that there was no evidence that any of the wife's savings, earnings or services contributed to the purchase of the shares of stock. The Court went on to say that the wife must allege and prove that she has furnished valuable consideration such as money or services other than those normally performed in the marriage relation which has directly or indirectly been used to acquire or enhance the value of the property. The rights or interests that the wife has in the property of her husband by virtue of the marriage relation alone, the Court said, will not justify a conveyance of property under section 17 of the Divorce Act.

In the last case cited by the plaintiff, Imbrie v. Imbrie, 94 Ill App2d 60, 236 NE2d 381, the trial court awarded plaintiff alimony, child support and the defendant's interest in their home. The defendant argued that a divorce decree should not transfer a fee in the husband's realty to his wife unless justified by special equities and that no special equities were shown. This Court disagreed with the defendant and in affirming the award quoted the trial judge's finding:

> That from the evidence regarding the needs of the plaintiff and her five children, the Court finds that a hardship would be created upon the entire family unless the marital home were awarded to the plaintiff as a partial award of alimony for the use of the

plaintiff and five minor children and to house and shelter them.

Imbrie v. Imbrie, 94 Ill App2d 60, 64, 236 NE2d 381.

 In the case at bar, the plaintiff neither alleged nor proved any special circumstances or equities with respect to her husband's stock and profit sharing plan. It is undisputed that the stocks and the interest in the profit sharing plan are in the defendant's name alone and that no personal funds of the wife were used either to acquire the shares of stock or to increase the defendant's interest in the profit sharing plan. Everett v. Everett, 25 Ill2d 342, 185 NE2d 201. Inasmuch as the decree for divorce specifically reserves the question of alimony the award of the stock cannot be considered an award of a lump settlement in lieu of alimony. The trial court, therefore, erred in awarding the plaintiff an interest in the various stock holdings of the defendant, including the defendant's interest in the profit sharing plan. Whether the defendant owes any money to the plaintiff because of the alleged sale of substantially all of the household furniture and for the removal of $2,700 from a savings account is a separate matter to be heard by the court.

 Finally, the defendant contends that the trial court excluded evidence relating to the income of the parties and erroneously based the award of child support on incomplete and insufficient evidence of the plaintiff's needs and the defendant's ability to pay. The decree for divorce required the defendant to pay $30 per week for each of the two children. The record is clear that the defendant should have been permitted to cross-examine the plaintiff as to her income from other sources, such as rental paid by a lodger, and to offer evidence in his behalf as to his ability to pay for the support of the two children and we so hold.

For the reasons stated, the decree granting the plaintiff a divorce is affirmed. That part of the decree award-

ing the plaintiff a percentage of the fair market value of stock and the profit sharing plan, which appears in paragraphs seven and eight of the decree, is reversed. The award of $60 for the weekly support of the two children is reversed and remanded and the court is directed to permit cross-examination of the plaintiff as hereinabove indicated and to permit the defendant to present evidence of his ability to pay for the support of the children. In all other respects the decree of the Circuit Court is affirmed.

Affirmed in part and reversed in part, and remanded with directions.

ADESKO and MURPHY, JJ., concur.