HOWARD L. KAUFMAN, Plaintiff-Appellant, *v.* SANDRA J. KAUFMAN, Defendant-Appellee.

(No. 57948; ▮▮▮▮▮▮▮▮)

First District (2nd Division)—September 27, 1974.

Henry A. Kalcheim and Bernard Hammer, of Chicago, for appellant.

Arnstein, Gluck, Weitzenfeld & Minow, of Chicago (Paul L. Leeds, of counsel), for appellee.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This appeal is to review two orders entered in a divorce case. The first directed the plaintiff, Howard L. Kaufman, to pay $3200 in additional temporary attorney fees to the lawyers for his wife, the defendant Sandra J. Kaufman. The second denied his motion to vacate the allowance of those fees.

On May 15, 1968, plaintiff filed a divorce suit in which he alleged that his wife Sandra was guilty of three acts of cruelty she allegedly committed in October and December 1962. Defendant, instead of answering the complaint, moved to dismiss it on the ground that on August 5, 1965, in a separate maintenance suit she had filed against the plaintiff, the trial court entered a decree in which it found that, without fault on her part, her husband (the plaintiff in this suit and the defendant in that one), had deserted her. Therefore, she contended that the separate maintenance decree was res judicata of the issues which plaintiff sought to

raise because the acts of cruelty he alleged occurred before the decree was entered in her favor. On order of the court, the legal issues were briefed and argued by the parties. Thereafter, the trial court sustained defendant's motion, dismissed the complaint, and gave plaintiff leave to file an amended one within 60 days. At the same time, defendant's counsel was awarded $500 in temporary attorney fees.

Plaintiff did not file an amended complaint within the time set by the court. Therefore, defendant moved to dismiss his suit and assess additional temporary attorney fees. However, after hearing the motion, the trial court gave plaintiff an additional 30 days to file his amended pleading, and did not act on the request for fees. Within this allotted time, plaintiff filed an amended complaint; and for the first time he claimed that during their marriage defendant was guilty of extreme and repeated mental cruelty; that she continuously subjected him to repeated humiliation and indignity, causing him serious emotional distress.[1]

Defendant moved to dismiss the amended complaint on the ground, among others, that it, too, was based on alleged facts which occurred prior to entry of the decree for separate maintenance. While this motion was pending, the trial court, on August 12, 1969, dismissed the pending complaint because plaintiff's counsel failed to appear in court. Then, on the 30th day after the dismissal, the case was reinstated and the court directed the parties to file memoranda of law discussing the issues raised by defendant's motion to dismiss. After considering their submissions, the trial court entered an order overruling defendant's motion and directing her to answer the amended complaint.

A short time after this order, defendant filed interrogatories which she requested the plaintiff to answer within the time required by the rules. He did not do so. Thereupon, on defendant's motion, the trial court ordered the amended complaint stricken. Despite this development, within the 30 days that followed, the parties stipulated that the plaintiff could answer the interrogatories *instanter,* that dismissal of the amended complaint could be vacated, and the cause be placed on the regular trial calendar of the court. Less than a month later, when the case was called for trial, it was dismissed for want of prosecution. Within 30 days of that dismissal, it was again reinstated. Then, plaintiff secured new counsel and the case was placed on the court's dormant calendar.

Shortly thereafter, defendant moved to strike plaintiff's answers to her interrogatories on the ground that they were vague, indefinite, unresponsive and evasive. The motion was sustained. Two weeks later, the

---

[1] "[E]xtreme and repeated * * * mental cruelty * * *" became a ground for divorce in Illinois in 1967. Ill. Rev. Stat. 1967, ch. 40, par. 1.

parties agreed to the entry of an order that permitted defendant to with-draw her interrogatories, vacated the striking of plaintiff's answers to the interrogatories and allowed him to file a third complaint for divorce. This complaint was filed; but defendant moved to dismiss it. Later, the motion was argued; and on October 7, 1970, it was overruled by an order that granted defendant leave to file an amended petition for additional temporary attorney fees. The petition was filed on October 21, 1971, supported by an affidavit of the attorney who had represented her throughout the proceedings. A week later, defendant answered the plain-tiff's third complaint. After denying all the allegations, she affirmatively alleged she had "* * * limited means with which to support herself and to pay attorneys fees and costs ncessary to defend this action * * *." No reply was filed to these allegations. The complaint and answer are still on file; plaintiff's claims for divorce have not been re-solved. Then on December 10, 1971, the petition for fees came before the court.

When the case was called, defendant's counsel reviewed its history, referred to his affidavit and told the trial judge that since November 19, 1968, when his firm was awarded $500 in temporary attorney fees, he had devoted 64½ hours to the various motions and court appearances. He requested an award of additional temporary attorney fees in the sum of $3200. Plaintiff's counsel responded by telling the trial judge that in a discovery proceeding, he had learned that defendant had on deposit, in banks and other institutions, the sum of $13,000. In addition, from a request that defendant admit the authenticity of certain documents, he learned that on October 9, 1971, with a $1500 down payment, defendant purchased a new Oldsmobile Cutlass four-door sedan.

During these proceedings, plaintiff's 1970 tax returns were in court and available to the trial judge. These showed plaintiff's income that year was between $31,000 and $32,000. Further, the returns disclosed that the plaintiff had an additional income of $3500 in interest earned on $100,000 that had been withdrawn from the business in which he was a partner. Moreover, from questions he asked counsel, the trial judge learned that plaintiff had paid his attorneys $5,150 in fees during the same period of litigation for which defendant's lawyer was seeking compensation. At the conclusion of the hearing, the court overruled all objections to the peti-tion, found that defendant's attorneys had spent 64½ hours representing her in the case and ordered plaintiff to pay $3200 in additional temporary attorney fees.

On January 6, 1972, within 30 days, plaintiff filed a motion to vacate the order. For years, Rule 2.3 of the circuit court of Cook County has

provided that "[t]he burden of calling for hearing any motion previously filed is on the party making the motion. If any such motion is not called for hearing within 90 days from the date it is filed, the court may enter an order overruling or denying the motion by reason of the delay." Plaintiff did not call his motion for hearing within 90 days of the date it was filed. In fact, it remained on file, without action, from January 6 to May 8, 1972, when defendant's counsel served on plaintiff a notice of motion, to be heard on May 22, 1972, requesting the trial court to deny the motion to vacate because of plaintiff's failure to comply with the court rule. On receipt of this notice, plaintiff's attorney, in turn, served notice of a motion asking the court to rule on the motion to vacate. On the scheduled date, the parties appeared and in a colloquy between court and counsel, plaintiff's attorney told the trial judge that he had been ill for a month and a half between the time the motion was filed and the date it was being heard. After hearing the parties, the trial court denied plaintiff's motion to vacate.

Three issues are presented for our review. 1. Whether the trial court erred in ordering plaintiff to pay defendant's lawyers $3200 in temporary additional attorney fees when discovery proceedings revealed that she had cash and liquid assets amounting to $13,000. 2. Whether the trial court erred in determining the amount of additional temporary attorneys fees in reliance on the statement of defendant's attorney concerning the number of hours he spent in defending the case, although that attorney refused and interfered with prior proceedings which sought discovery of his time records. 3. Whether the trial court abused its discretion when as one of the grounds for denying plaintiff's motion to vacate, it relied on his failure to comply with Cook County circuit court Rule 2.3.

I.

It appears that when defendant's motion for additional temporary attorney fees was allowed, the trial judge knew, and defendant conceded, that she had $13,000 consisting of treasury notes, a certificate of deposit, a savings account and some stocks. Because of this fact, plaintiff argued that from these assets defendant could pay the fees of her attorney, particularly in view of the fact that she had purchased a new automobile that had required a $1500 down payment. The trial court rejected this argument, saying of plaintiff's lawyer that "[h]e knows the law doesn't require her to spend her $13,000 if this man is in a position financially to pay [sic]." In this appeal, plaintiff points to this statement and argues that the trial judge allowed defendant's motion for fees without finding that she was financially unable to pay them. Plaintiff insists that this

comment reveals a mistaken belief by the trial judge that the law discriminates in favor of a wife when she engages in divorce litigation with her husband.

■■ This argument, in our judgment, over-emphasizes one reason the trial judge gave for rejecting plaintiff's objection to the motion for fees. It is well known that the reasons a trial judge gives for his ruling are not of importance; the question on review is whether his decision was correct. (See *Balfour v. Balfour*, 20 Ill.App.2d 590, 156 N.E.2d 629.) It is the judgment we review, not the proffered reasons which may underlie it. (*Carnes v. Carnes*, 333 Ill.App. 316, 77 N.E.2d 341; *Haney v. Haney*, 37 Ill.App.2d 216, 185 N.E.2d 409.) Therefore, the question we must decide is whether the trial court erred when, without expressly finding that defendant was financially unable to pay her own expenses, it awarded her additional temporary attorneys fees, despite her possession of $13,000 in treasury notes, certificates of deposit, a savings account balance and some stocks.

■ It is a settled rule that to justify allowance of attorneys fees in a divorce suit, the party seeking this relief must show financial inability to pay and the ability of the other spouse to do so. (*Woodshank v. Woodshank*, 13 Ill.App.3d 692, 693, 300 N.E.2d 494; *Berg v. Berg*, 85 Ill.App.2d 98, 229 N.E.2d 282; *Cimino v. Cimino*, 93 Ill.App.2d 412, 236 N.E.2d 299.) However, in this context, financial inability does not mean destitution. In divorce cases, when questions arise concerning suit money, the income and assets of both spouses must be considered; and if the wife's funds, though she has some, are insufficient, those of the husband can be reached so that the wife, without exhausting her own estate, can protect her rights in the marital litigation. See *Moore v. Moore*, 25 Ill.App.2d 255, 166 N.E.2d 629 (abstract opinion).

Recently, in *Moreau v. Moreau*, 9 Ill.App.3d 1008, 293 N.E.2d 680, we held that the fact a wife was earning more than her husband was not conclusive of the question whether she was able to pay all her attorneys fees. And in analogous domestic relations, it is generally recognized that financial inability exists where to enforce disbursement of available funds would strip the person of the means of his support and undermine his economic stability. Compare *Tebo v. Robinson* (1885), 100 N.Y. 27, 2 N.E. 383; *Commonwealth v. Goldman* (1956), 180 Pa. Super. 337, 119 A.2d 631; *Binzel v. Viehmann* (1940), 111 Mont. 6, 106 P.2d 187.

■■ In this case, although defendant had $13,000 from which she purchased a new automobile, the pleadings contained a decree finding that, without her fault, she was living apart from the plaintiff with custody of a growing boy on a monthly temporary alimony of $650. She had alleged, and plaintiff did not reply, that she was unable to pay for defense of the

suit. This fact can be inferred from the record. Under these circumstances, it was implicit in the trial court's ruling, that defendant was not able to pay her own attorneys. Therefore, it was equitable and proper for the trial judge to consider plaintiff's greater financial ability and allow defendant's motion for additional temporary attorneys fees. Compare *Eide v. Eide* (1969), 1 Wash. App. 440, 462 P.2d 562; see 24 Am.Jur.2d *Divorce and Separation* § 595 (1966); 27A C.J.S. *Divorce* § 222 (1959).

## II.

As to the amount allowed, the trial court had before it an affidavit of the lawyer who had represented defendant since the suit was filed. In response to the claim of plaintiff's attorney that discovery had been resisted, defendant's lawyer produced for inspection photostatic copies of his time records. In addition, the trial judge was familiar with the case, its procedural history and the details of the litigation. He knew, for example, that the complaint on file was plaintiff's third; and that there had been a considerable number of court appearances on numerous contested motions. After the court was told the number of hours being claimed, the trial judge asked plaintiff's counsel if he wanted to cross-examine defendant's lawyer concerning the matter. The invitation was declined; no request for a hearing was made by the plaintiff. Consequently, no evidence was heard.

■■ A trial judge can award attorneys fees in a divorce case without hearing evidence as to reasonableness of the fee. (See *Canady v. Canady*, 30 Ill.2d 440, 197 N.E.2d 42.) This is particularly true where, in a case like this one, the question is considered by an experienced trial judge, who had personal knowledge of the case including its procedural history and the time that had been required of the lawyers. Of course, a party resisting an application for attorney fees in a divorce suit can request a hearing and is entitled to an opportunity to present evidence. However, where a husband does not request a hearing on his ability, or his wife's inability, to pay attorneys fees, it is not error for the trial judge to rely on the pleadings, affidavits on file and on his own experience when he awards attorneys fees in a divorce case. See *McCowan v. McCowan*, 313 Ill.App. 654, 40 N.E.2d 536; *Moore v. Moore*, 25 Ill.App 2d 255, 166 N.E.2d 629; *Needler v. Needler*, 131 Ill.App.2d 11, 268 N.E.2d 517; Annot., 10 A.L.R.3d 280, 299 (1966).

■■ In this case, the issue was a simple one; the amount of time defendant's lawyer represented he devoted to the case did not appear unreasonable; the compensation sought was within reasonable limits. Plaintiff, in open court, was shown copies of the time records involved. And despite his lawyer's contention to the contrary, there was no showing

that discovery proceedings would have revealed anything that would have helped him defend the motion for fees. Therefore, despite the dispute concerning discovery, the trial court did not err in determining the amount of additional temporary attorneys fees by relying on the statement of defendant's attorney concerning the hours he said had been spent in defending the suit filed by the plaintiff.

## III.

The record shows that plaintiff filed a motion to vacate which he, through his counsel, allowed to remain inactive for five and a half months, in violation of a purpose implicit in Cook County circuit court Rule 2.3. When it was called, mainly at defendant's behest, the trial court denied the motion, giving as grounds the findings he made when he allowed the fees, and plaintiff's failure to call the motion for hearing within 90 days as required by the court rule. In our judgment, this ruling was correct.

■■ Rules of procedure are not ends in themselves; they are designed to secure orderly and fair methods of disposing of litigated matters. (*People ex rel. Pickerill v. New York Central R.R. Co.*, 391 Ill. 377, 383, 63 N.E.2d 405.) The court rule involved was binding on the parties; it should have been obeyed by plaintiff's counsel after the motion to vacate was filed. Although the illness of a lawyer is always a persuasive excuse for his failure to comply with a court requirement, the reason given the trial judge (that counsel was ill for a month and a half) did not really explain why action was not taken on the matter for 5½ months. The decision whether to vacate an order is always within the sound discretion of the trial court; and only where there is an abuse of that discretion will we interfere. (*Stritar v. Stritar*, 48 Ill.App.2d 332, 199 N.E.2d 274.) We find no abuse of discretion in the trial court's denial of plaintiff's motion to vacate. Therefore, the orders allowing additional temporary attorneys fees and denying the motion to vacate are affirmed.

Affirmed.

HAYES, P. J., and DOWNING, J., concur.