CARYN GREIMAN, a/k/a Caryn Friedman, Petitioner-Appellee, *v.* EDWARD FRIEDMAN, Respondent-Appellant.

First District (5th Division)    No. 79-2037

Opinion filed November 21, 1980.

Mitchell F. Asher, of Beaubien & Asher, of Palatine (Janet Strange Rubel, of counsel), for appellant.

Morton A. Gordon, of Chicago, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Defendant, Edward Friedman, appeals from the trial court's order granting his former wife's post-decree motion to require his continued payment of college expenses for their three adult daughters. He had voluntarily paid these expenses in full until the spring 1979 school term, at which time he ceased payments and this action was initiated. On appeal, defendant contends that, under the provisions of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (Ill. Rev. Stat. 1979, ch. 40): (1) he has no duty to provide a college education for his two adult daughters who have poor academic records; (2) he has no duty to pay the private college expenses for the third daughter whose application was accepted at the State's university; (3) the trial court abused its discretion by failing

to consider the financial obligations of his second family; and (4) the trial court abused its discretion by ordering him to pay a substantial portion of petitioner's attorney's fees. For the reasons discussed below, we reverse the judgment and remand the cause for a new hearing on the issue of the parties' financial resources. The pertinent facts follow.

Plaintiff, Caryn Greiman, and defendant were divorced over a decade ago. They have three daughters by that marriage; Lori, Jodi, and Tami, who remained in their mother's custody after the divorce. Both parents remarried. The children from a former marriage of plaintiff's husband live with them. Defendant and his second wife have two young children.

At the time plaintiff initiated the post-decree action all three daughters were attending college. Both parents testified as to their income and assets, and all three daughters also testified. At the hearing, the following evidence was adduced.

Lori, the oldest, was 21 years old at the time of the 1979 proceedings. During the preceding four years she had attended Northern Illinois University. Her father had paid her college tuition and expenses, an estimated $3,500 per year. During those four years she failed one course, withdrew from another, and took fewer credit hours than is generally necessary to complete schooling in four years. Lori testified that she had a "B" average but that she had not received her degree after eight semesters. She also stated that she had a savings account and earnings from a summer job but did not contribute to her college expenses, as her father had not asked her to do so.

Jodi, age 20 at the time of the hearing, had attended Northern Illinois University for two years. She was a semester behind, having taken 11-12 credit hours per semester rather than the average 15-16 hours. At the end of two years she had failed art and math courses, accumulated 15 hours of "D" grades, and had withdrawn from a course. At the time of the hearing she had applied to transfer to Southern Illinois University because she "was bored" and "didn't like Northern [because] it was too cold." Like Lori, Jodi had saved some money but did not contribute to her college expenses, nor was she asked to do so.

Tami, age 18 at the time of the hearing, had attended Washington University in St. Louis, a private school, for one year. She has a congenital physical condition that severely affects her vision and her ability to walk long distances. Her father voluntarily paid for her first year and tendered $2400 for her fall 1979 semester. Total expenses per semester were estimated at $4188. By maintaining high grades, Tami had received a scholarship during her freshman year, which reduced tuition cost from $2400 to $1700. However, she did not reapply for the scholarship the

following year. Tami testified that she had savings and checking accounts, and planned to work during school. Tami also testified that she had applied to the University of Illinois in addition to Washington University; that her father had indicated to her that she was a sensitive person who merited "special" college education and that he was willing to pay for it; and that going to Washington University was "the best thing [she had] ever done in [her] life."

The trial court also received testimony and documents relevant to the parties' income and assets. The court's findings, based on the parties' 1978 Federal income tax returns, show defendant's total income to be $52,046 and his adjusted gross to be $47,106. Plaintiff, a school teacher, had 1978 income of $17,203.55. The trial court further took note of defendant's other assets and listed them as: (1) $50,000 home equity (new wife contributing $30,000); (2) $20,000 in savings account; (3) $5,000 in an individual retirement account; and (4) one-third interest in the business that pays his salary. Plaintiff's individual assets include part interest in her home, a $1,000 certificate of deposit, and $2,000 in a joint checking account with her new husband.

After hearing the evidence, the trial court ordered respondent to pay certain amounts of money for the three girls' remaining college expenses. The court calculated that defendant's income was 75% of the total of his and plaintiff's combined income. With this in mind, the court considered each daughter's needs and rights separately. For Lori's ninth semester of college, she needed $1750. Because of her failure to graduate in the usual eight semesters, the court ordered Lori to pay one-half the total costs for the extra semester. The balance was to be paid by Lori's parents under the 75/25% ratio. Thus, defendant was held liable for 75% of one-half of the total ($657), and plaintiff was to pay 25% of one-half the total ($218). In addition, defendant was ordered to pay his former wife $180 as partial reimbursement for money she had advanced for Lori's previous semester. These payments were deemed full satisfaction of any further liability toward Lori's education.

For Jodi, the daughter with the poorest academic record, defendant was ordered to pay 75% of her total estimated expenses of $1900 per semester, up to eight semesters. The trial court conditioned defendant's payments upon the requirement that Jodi maintain at least a "C" average. If her grades dropped below this level, defendant's liability for Jodi's college expenses would abate according to a certain ratio.

In considering Tami's needs, the trial court stated that defendant must pay her full tuition and board of $3500 per semester for her remaining 6 semesters. In reaching this decision the court looked beyond defendant's income to his business assets, stating that the evidence

indicated that defendant had originally contemplated paying for Tami's tuition and board.[1]

OPINION

Defendant's major argument is that he should not be required to continue financing the college education of his daughters. The ultimate, factual determination of this matter rests with the trial court, upon consideration of all relevant circumstances under section 513 of IMDMA, which provides, in pertinent part:

"The court also may make such provision for the education and maintenance of the child or children, whether of minor or majority age, out of the property of either or both of its parents as equity may require, whether application is made therefor before or after such child has, or children have, attained majority age. In making such awards, the court shall consider all relevant factors which shall appear reasonable and necessary, including:

(a) The financial resources of both parents.

(b) The standard of living the child would have enjoyed had the marriage not been dissolved.

(c) The financial resources of the child."

Because we believe that the trial court erroneously precluded evidence relating to the parties' total "financial resources," we reverse the judgment and remand for a new hearing on that issue.

I.

Before discussing the need for a new hearing on the income and expenses of the parties, we must first address defendant's rather novel contention that his children's poor scholastic achievement completely negates his duty to pay for their college education. Section 513, by its terms, empowers the trial court to order a divorced parent to pay his or her nonminor children's educational expenses, "as equity may require." The question defendant raises thus involves the scope of the trial court's equitable discretion, rather than the imposition of an absolute duty upon divorced parents to pay their children's college expenses.

Defendant asserts that Lori's and Jodi's failure to pursue their studies diligently has resulted in doubt whether they are likely degree candidates and consequently, he should not be required to contribute any further to

---

[1] During the oral arguments of this appeal it was revealed that Lori has been graduated from Northern Illinois University and is currently pursuing a master's degree. Jodi has transferred to Southern Illinois University and Tami has remained at Washington University in St. Louis. Plaintiff's counsel further stated that the money for these college expenses was paid by plaintiff and her husband, pending the outcome of this appeal.

their college education. He further argues that both are over 21 and that both have the resources to help finance their own education. Although he previously paid the bills for his daughters' college expenses on a voluntary basis, he maintains that, since he had no duty to pay these expenses, the court should not now impose this duty on him.

■■ ■ In support of these arguments, defendant cites authorities from Illinois and other jurisdictions. None of the cited cases, however, directly addresses the question of whether children must meet certain academic standards to be awarded college expenses from a divorced parent. To support his theory, defendant quotes from *Sovey v. Sovey* (1975), 30 Ill. App. 3d 690, 691, 333 N.E.2d 299, 301: "Where the father's financial ability is ample to provide a college education for his child and the child shows an aptitude that would indicate he would benefit from such a college education, the court may in the exercise of its discretion require the father provide such college education." In *Sovey*, a father was ordered to contribute to his adult son's college expenses. In determining that the son's 21-month sojourn away from college was not an abandonment of his college plans, the court noted that "it is undisputed that he was successful in college, and it appears that he had every likelihood of completing his college studies satisfactorily." (*Sovey*, 30 Ill. App. 3d 690, 692-93, 333 N.E.2d 299, 301.) We disagree with defendant's suggestion that *Sovey* supports his theory that a child's "successful" performance in or completion of college is a prerequisite for receiving funds from a divorced parent. As the court recognized in *Harding v. Harding* (1978), 59 Ill. App. 3d 25, 374 N.E.2d 1304, imposing a duty of successful completion of studies would not be in the best interests of the child. "The benefits of attendance at, as distinct from graduation from a college or university, are intangible and we decline to measure one against the other." (*Harding*, 59 Ill. App. 3d 25, 28, 374 N.E.2d 1304, 1307.) Adopting similar logic, we believe that a student's academic record is merely one relevant factor, under section 513, for the court to consider in assessing educational expenses, as where the student repeatedly demonstrates a lack of ability or interest in his or her college pursuits. (See *Bates v. Bates* (1970), 62 Misc. 2d 498, 310 N.Y.S.2d 26.) However, we decline respondent's invitation to hold that a divorced father has no duty to pay college expenses for his adult children merely because they have allegedly poor academic records.[2] As we have discussed, under our statute and relevant case law, there never has been an absolute duty for a father to pay college

[2] For us to pronounce such a rule would pose obvious problems of what standards to apply and whether grades alone would be determinative, as opposed to a pattern of indifferent conduct. Such considerations, we believe, are best left to the trial judge's discretion in the specific factual contexts of cases as they arise.

expenses. Such a duty is created only by a trial court's order, after a hearing, either to enforce an agreement between the parties or to create a post-divorce decree duty, upon proper petition of a party. Therefore, we must determine if the trial court abused its discretion in assessing the daughters' scholastic performance as a relevant consideration under section 513.

■■ Under the facts of the present case, only two daughters, Lori and Jodi, are alleged to have poor academic records. While it is true that Lori's performance extended her schooling needs by an extra semester, she testified to maintaining a "B" average. We cannot say that her overall performance was so poor that the lower court abused its discretion in requiring her father to contribute to one final semester, especially since the court required Lori to pay half of the total and further required Lori's mother to contribute. In Jodi's situation, because her college performance was the poorest of the three daughters, the trial court keyed defendant's liability for her remaining college expenses to her maintenance of at least a "C" average. It is clear, therefore, that the trial court considered the scholastic abilities of both women in fashioning the relief granted. This was appropriate, under section 513 of IMDMA, as one of the relevant factors to be considered in this case.

■■ Similarly, we believe that the trial court had the discretionary power to decide the issue of Tami's attendance at a private school rather than the State's university. Defendant urges this court to follow the lead of those jurisdictions which have held that a divorced parent need not pay for a private school education when adequate public schools are available. (*E.g., Habas v. Habas* (1977), 56 App. Div. 2d 747, 392 N.Y.S.2d 28; *Rosenthal v. Rosenthal* (1952), 19 N.J. Super. 521, 88 A.2d 655.) However, we are not persuaded to adopt, as a rule of law, another jurisdiction's approach which appears to be inconsistent with our own because we believe that section 513 adequately encompasses this issue also. In Tami's situation, the lower court could have determined that her satisfaction with Washington University and her father's apparent acquiescence in her attendance there justified the order that respondent continue to pay her expenses. We do not imply that a child has unlimited discretion to attend a private school at her father's expense or that a court might not in some circumstances find it to be inequitable to require a father to pay the increased expenses. We simply hold that a court may consider the private/public school issue as a relevant factor under section 513.

## II.

Defendant next contends that he should have been allowed to introduce evidence of his financial obligations to his second family. We agree, and base our reversal on this ground. However, we reject respond-

ent's assertion that because the court heard plaintiff's testimony regarding some of her family's expenses, he was consequently denied equal protection of the law under the fourteenth amendment. We believe instead that by precluding defendant's evidence of his financial liabilities, the trial court failed to satisfy section 513(a) of IMDMA, which provides that the court "*shall* consider all *relevant* factors * * * including: (a) The financial resources of both parents." (Emphasis added.) During the hearing, the trial judge responded to counsels' discussion of whether defendant could pursue a line of questioning regarding his expenses, stating that "it is immaterial, the question of $50,000 in income, what does he reasonably expect to contribute to the college education of the children and if he chooses to take on a second family, that's a voluntary matter he has done and subject to his prior knowledge that the kids wanted a college education. I think the same thing applies to her."

Because of the apparent confusion over the relevance of a remarried parent's "second" family, it is necessary to briefly review the pertinent case law.[3] There is authority for the broad proposition that a father's obligation to his second family does not present, in itself, a change of circumstances sufficient to warrant modifications of a support order. (*E.g., Gregory v. Gregory* (1964), 52 Ill. App. 2d 262, 202 N.E.2d 139.) In *Gregory*, defendant had violated a decree under which he was ordered to pay his former wife alimony and child support for his minor children. He was held liable for substantial arrearage because, under Illinois law, past due alimony and support installments are vested and cannot be subsequently modified by an order of the court, although future amounts may be modified if the parties' changes in circumstances so warrant. (*Gregory*, 52 Ill. App. 2d 262, 266-68, 202 N.E.2d 139, 142.) The court went on to find that the defendant's remarriage was not a sufficient change of circumstances, *per se*, to warrant modification, stating that "[a]lthough the effect may be to deprive a second wife of support, from a legal standpoint, the first come first and the second come second. In other words, the first obligations must be met before the second can or will be considered [citations]." We do not believe this dictum was intended to be elevated to a rule that would bar as *irrelevant* all evidence concerning a second family's expenses and indeed, the *Gregory* court's statement does not go so far.

Moreover, several recent decisions have acknowledged that the second families' needs are relevant, though not controlling, on the issue of support or alimony modification orders. In *Tan v. Tan* (1972), 3 Ill. App. 3d 671, 675, 279 N.E.2d 486, 489, the court stated that defendant's

---

[3] Section 513 of IMDMA codified prior Illinois decisional and statutory law. (See Ill. Rev. Stat. 1975, ch. 40, par. 19; Ill. Ann. Stat., ch. 40, par. 513, Historical and Practice Notes, at 788 (Smith-Hurd 1980).)

remarriage and subsequent birth of a child "is a factor to be taken into account together with all other circumstances. Realistically, defendant is obligated to support his present wife and child." See also *People v. Stanley* (1978), 60 Ill. App. 3d 909, 376 N.E.2d 1095 (additional family obligations might form a basis for a petition to modify previous support order but could not justify a father's total failure to support four minor children from a previous marriage); *Berkheimer v. Berkheimer* (1978), 63 Ill. App. 3d 19, 380 N.E.2d 474 (expenses relating to a second family are relevant, but of "secondary" consideration); *Singer v. Singer* (1979), 70 Ill. App. 3d 472, 388 N.E.2d 1051 (denial of plaintiff's petition for reimbursement of college expenses not an abuse of discretion where remarried father's unrebutted testimony indicated his expenses exceeded his take-home pay).

Except for *Singer*, which involved a mother's petition for reimbursement, these cases considered the appropriateness of modifying a father's duty, under an existing court order, to pay alimony to a first wife or to pay child support for minor children of the first marriage. The present case, in contrast, involves the propriety of imposing a duty on defendant to continue payments for his adult daughters' college expenses. Without underestimating the importance of the "first" children's needs and expectations, we cannot state unequivocally that their college expenses take precedence over the needs of their father's "second," minor children. This is one reason why it is important for the trial court to hear further evidence of the parties' complete financial circumstances. Realistically, it is likely that both parties pool their resources with those of their second spouses, so that their assets and liabilities are substantially intertwined. Allowing the parties to submit detailed information of their finances will permit the trial court to reach a more principled, and thus more equitable, determination of the share that each party should contribute.

■■ Whether defendant's liability will be modified, of course, depends on the outcome of the new hearing. We express no opinion on the merits of this issue, but merely hold that it was an abuse of discretion for the trial court to refuse to hear defendant's relevant testimony concerning his financial obligations to his second family. As previously discussed, the other factors that the lower court considered in determining defendant's liability—the daughters' academic abilities and their financial resources—were proper ones to consider.

### III.

Respondent's final contention is that the trial court abused its discretion in ordering him to pay approximately 75% of petitioner's attorney's fees. Section 508 of IMDMA provides:

"The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred by the other spouse, which award shall be made in connection with the following:

(1) The maintenance or defense of any proceeding under this Act."

■■ The trial court should have considered each parties' total financial resources in making the award for attorney's fees. While there was a hearing as to the reasonableness of the fees, the judge at one point stated that there was "no question in [his] mind that the husband has a better financial ability to pay attorney's fees than the wife." This assumption was based on the evidence of the parties' income and assets. Because we have found that the trial court must consider the parties' expenses as well as income in determining their financial resources under section 513(a), we hold that the issue of attorney's fees must also be reconsidered during the new hearing.

The general rule concerning awards of attorney's fees in a divorce suit is that "the party seeking this relief must show financial inability to pay and the ability of the other spouse to do so." (*Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 1050, 318 N.E.2d 282, 286.) The *Kaufman* court explained that financial inability does not mean destitution, but it "exists where to enforce disbursement of available funds would strip the person of the means of his support and undermine his economic stability." (22 Ill. App. 3d 1045, 1050, 318 N.E.2d 282, 286.) In the instant case, defendant does not question the reasonableness of the amount awarded; rather, he argues that no portion of it should have been taxed to him because plaintiff's "financial inability" was not demonstrated. We believe that the trial court, upon remand, must also determine this issue in light of the evidence presented at that time.

For the reasons set forth above, we reverse the judgment of the lower court and remand the cause for a new hearing.

Reversed and remanded, with directions.

LORENZ and MEJDA, JJ., concur.